Argued December 5, 1966, affirmed January 18, 1967

# STATE OF OREGON $v.$ MICHAEL DANA PHILLIPS

422 P. 2d 670

*Verden L. Hockett, Jr.,* Roseburg, argued the cause for appellant. With him on the briefs was Thomas C. Hartfield, Roseburg.

*Doyle L. Schiffman,* Deputy District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Avery W. Thompson, District Attorney, Roseburg.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

HOLMAN, J.

■ Defendant has appealed from a judgment of conviction of first degree murder. At the time of the alleged murder he was 17½ years old. He was remanded to adult court by the juvenile court for trial. The following is a construction of the evidence most favorable to the state, as is required after conviction. *U. S. National Bank v. Lloyd's,* 239 Or 298, 315, 382 P2d 851, 396 P2d 765 (1964); *Durkoop v. Mishler et al,* 233 Or 243, 246, 378 P2d 267 (1963).

The defendant was a high school student with an intelligence quotient of 116 (bright normal). In the middle of the night he arose from his bed and went to another home a short distance away where he knew a female high school classmate was baby sitting. He did this with the intention of attempting to have sexual intercourse with her. He obtained entrance through an unlocked kitchen window and went into a bedroom where the victim and a small child were sleeping. As he was standing over the victim she awakened and he panicked for fear of being identified and killed her by stabbing her repeatedly with a bayonet. When the small child commenced to awaken he hit her over the head with the butt of the bayonet and then fled through a rear door.

On the afternoon after the murder two police officers called at the defendant's home to see him. He resided with a brother, who was his guardian, and the brother's wife. The police officers were making a routine check of various persons in the neighborhood

who had been previously known to law enforcement agencies and had no reason to particularly suspect the defendant or to arrest him. He was only one of several who were questioned and fingerprinted. They gave him warnings concerning his right to counsel and to remain silent and told him they were investigating the death of the victim. In response to their inquiry as to where he had been the night before he told them he had been to a mill with his brother and had returned about midnight, and that he had been in bed until he arose the next morning to go bean picking. The officers asked to search his room and he took them to it where they found nothing of interest. They asked him if he would accompany them to the sheriff's office to be fingerprinted, to which he consented. He was told he was not under arrest.

Upon arriving at the sheriff's office defendant was left sitting unattended while the deputy who brought him to the courthouse secured from the juvenile court an order authorizing that defendant's fingerprints be taken. This order was demonstrated to defendant and he was fingerprinted. He was then taken to an interrogation room in the jail where he was again given warnings relative to his rights. After about five minutes of questioning during which he refused to take a polygraph test, the following occurred:

\* \* \* \* \*

"A Well, during this five minute period of time, he was talked to by both Corporal Hardy and myself, and I believe at the latter portion of this five minutes I was talking with Michael. At that time I was interrupted by the Corporal, who said—I don't recall his exact words, but he said something like, 'We are just wasting our time. Michael, didn't you kill Mary Mohr?' He said, 'If you did, we are going to find out about it anyway.'

And at that time Michael lowered his head and says, 'Yes, I guess you are,' and said, 'Yes, I did,' and explained the details of the homicide."
\* \* \* \* \*

Defendant claims the court erred in overruling his objection to the admission of the evidence of the oral statements he made to the police relative to his commission of the crime. Defendant contends that at the time of questioning he was in custody, less than eighteen years of age, and therefore under the exclusive jurisdiction of the juvenile court. He urges that under these circumstances the police had no authority to question him and the information received by them prior to remand was inadmissible because he was entitled to the protection of the juvenile court.

■ Prior to the time a juvenile court order was obtained permitting defendant to be fingerprinted, his questioning would appear to have been noncustodial. However, after the order was obtained he was in the custody of the police and the damaging admissions were the result of custodial questioning. Being in custody, defendant was within the exclusive jursdiction of the juvenile court. ORS 419.476(1)(a)[1] and 419.573 (1)[2].

3. Most of defendant's contentions have been covered by an opinion of this court rendered since the fil-

---

[1] ORS 419.476(1) "The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; or
"\* \* \* \* \*."

[2] ORS 419.573(1) "Except as provided in ORS 419.579, the jurisdiction of the juvenile court of the county in which a child is taken into temporary custody shall attach from the time the child is taken into custody."
"\* \* \* \* \*"

ing of his appeal. *State v. Gullings,* 244 Or 173, 416 P2d 311 (1966). We there recognized that the *parens patriae* position of the juvenile court should not be used to secure incriminating evidence against a juvenile for use in his conviction as an adult. However, we said:

"Presuming that federal constitutional Fifth and Sixth Amendment rights are granted, (citing cases) we believe that an absolute prohibition (of admissions and confessions received prior to remand) is not required so long as it is made clear to the juvenile that the questioning authorities are not operating as his friends but as his adversaries. * * *"

"* * * * *

"* * * No 'principles of fundamental fairness' are offended when the information is secured in a setting that is so patently adversarial as to be understood by the child. The *parens patriae* relationship does not exist between police and child but between court and child. Police are in the business of solving transgressions against the welfare of society and the apprehension of those who are responsible therefor. They are not engaged in the rehabilitation of the child and the treatment of his emotional and family problems where the free exchange of information and a close relationship is so important. The use of information secured by police will not, in our opinion, tend to make more difficult the establishment of a close relationship between juvenile workers and the child.

"Nor is the integrity of the juvenile court threatened so long as constitutional due process is required whenever the police secure information which is subsequently used against the child in an adult prosecution. * * *"

We believe the circumstances here were such that there would have been no misapprehension on defendant's

part concerning the adversary position or purpose of the police.

■■ Defendant contends the provisions of subsection (2)(a) of ORS 419.575 prohibits the type of questioning performed here. It is apparent from a reading of the entire statute[9] that its principal purpose is the prevention of the incarceration of juveniles in the presence or proximity of adult prisoners.[10] The prohibition of the statute is against detention in a jail.

---

[9] "419.575 Place of detention or shelter care while child in temporary custody. (1) The juvenile court of each county shall designate the place or places in the county or at a reasonably short distance outside the county in which children are to be placed in detention or shelter care when taken into temporary custody. Except where inconsistent with the safety and welfare of the child or of others, a child taken into temporary custody shall be placed in shelter care rather than detention.

"(2) No child shall at any time be detained in a police station, jail, prison or other place where adults are detained, except as follows:

"(a) A child may be detained in a police station for such period, not exceeding three hours, as may be necessary to obtain the child's name, age, residence and other identifying information.

"(b) A child remanded to the court handling criminal actions or to municipal court may be detained in a jail or other place where adults are detained.

"(c) Where a suitable children's detention facility is available, on order of the court a child 16 years of age or older may nevertheless be placed in a jail or other adult detention facility if the child's conduct or condition is such as to endanger his safety or welfare or that of others in the children's detention facility.

"(d) Where a suitable children's detention facility is not available, a child 14 years of age or older may be placed in an adult detention facility.

"(d) Except for a child detained in jail pursuant to a remand to the court handling criminal actions or to municipal court, children detained in jail as provided in subsection (2) of this section shall be placed in a separate room or ward screened from the sight and sound of the adults being detained therein."

[10] The passage of ORS 419.575 into law resulted from Section 50 of the juvenile code proposed by the Legislative Interim Committee on Judicial Administration created by SJR 24. Oregon

An exception to the prohibition, for a limited time, is granted for the purpose of questioning concerning certain enumerated subjects. The thrust of the prohibition then, is not against all questioning, but against detention in an improper place. In the present case, however, since the police were questioning defendant for purposes other than those enumerated, the statute

---

Laws, 1957. The Section was passed as proposed by the Committee with some slight changes not here relevant. The Committee's report relative to the purpose of Section 50 stated as follows:

\* \* \* \* \*

"When we come to the question of secure temporary custody, however, the problem is somewhat different. Here we must protect the child against association with adult criminals and at the same time provide realistic control over dangerous children as well as guidance for the officer who has picked up the child. There are two situations which must be covered: first, where there is a detention facility; and second, where there is not. Where there is a detention facility, the court of course will designate this as the place for taking children requiring secure custody. In this situation, a child may not be held at a police station or jail at all, except (1) for preliminary identification, (2) where he has been remanded to criminal court, or (3) where the juvenile court has ordered a child over 16 to be held in jail because he is so unruly as to disrupt the detention facility. Where a suitable detention facility is *not* available, the juvenile court has no recourse except to use the jail as the place of detention. However, no child under 14 may be held in jail in any event. Finally, section 50 provides that where a child is held in a jail, he must be screened from the adult prisoners. There have been too many cases where children have been kept 'separate' by being put in a cell adjoining one where drunks or streetwalkers are spending the night.

"It will be noted that the provisions of section 50 are not as restrictive as ORS 419.546, an extremely confused section which seems to require that no child may be kept in the same building with adult offenders. While desirable as a goal, such a rule is unrealistic in the present state of development of detention facilities. The committee thinks it better to establish a rule which is practical and then enforce it rather than to set out a standard which we know in advance cannot be complied with."

\* \* \* \* \*

prohibiting detention in jail was violated. However, defendant was not subjected to association with adult criminals, the evil it was the purpose of the statute to avoid, and the violation of the statute, therefore, was not sufficiently grievous to justify a prophylactic rule prohibiting the use of the evidence thus obtained as long as the Fifth, Sixth and Fourteenth federal constitutional amendment requirements were otherwise met. There is no contention that they were not.

The defendant also contends that the use of the information secured by the police was a violation of ORS 419.567(3), which prohibits information appearing in the juvenile records from being used to establish criminal liability against the child. The stated purpose of this provision was to insure a maximum disclosure of facts in juvenile court.[9] As previously indicated in *Gullings* at 244 Or 173, if a child is aware of the adversarial nature of the questioning and its implications, and constitutional safeguards are met, the safety of the public requires the use of the information and a maximum disclosure of facts to the juvenile court will not be prejudiced. As pointed out there, the provisions of the code permitting a remand to adult court for trial would be a useless gesture had the legislature, contemplated that all information secured prior to remand could not be used.

The defendant also contends error was committed when he was required to submit to a psychiatric examination upon behalf of the state. The defendant pleaded not guilty and served notice on the state that at trial he would contend he was insane or mentally defective at the time of the alleged commission of the crime. Thereafter the prosecution made application to the

[9] Report of Legislative Interim Committee on Judicial Administration (1959), Part II, p 26.

court to have defendant examined by a psychiatrist for the state, which application was granted over defendant's protest. The court placed the limitation upon the examination that defendant could not be questioned concerning his acts or conduct at or immediately near the time of the commission of the alleged crime and required that defendant's attorney be permitted to be present at the examination. The psychiatrist who examined defendant pursuant to the authority granted by the court testified at the trial over defendant's objection relative to his opinion of defendant's mental condition.

■ This court has never decided whether the state has a right to a mental examination of a defendant who pleads not guilty by reason of insanity where defendant has refused to consent to such an examination. In *State v. Nelson,* 162 Or 430, 451-452, 92 P2d 182 (1939), this question was raised but the court ruled that defendant had consented to the examination. The court said in what clearly was dicta:

"* * * Nevertheless, it is held that no constitutional right of the defendant is violated even if the examination is against the will and without the consent of the defendant."

The great weight of authority is that the state is entitled to such an examination where a plea of insanity has been made. *State v. Mulrine,* 183 A2d 831 (Del Sup 1962); *People v. Carpenter,* 13 Ill2d 470, 150 NE2d 100, 104-105 (1958); *State v. Grayson,* 239 N C 453, 80 SE2d 387, 390 (1954). In the *Grayson* case the court stated as follows:

"* * * The constitutional privilege against self-crimination in history and principle seems to relate to protecting the accused from the process of extracting from his own lips against his will an ad-

mission of guilt, and in better reasoned cases it does not extend to the exclusion of his body or of his mental condition as evidence when such evidence is relevant and material, even when such evidence is obtained by compulsion. * * *"

If the rule were otherwise there would be no way for the state to rebut a plea of insanity after the defendant had put his mental condition in question by such a plea. No error was committed in allowing the defendant to be examined by the state's psychiatrist nor in permitting him to testify as to his opinion of defendant's mental condition at the time of the crime.

The judgment of the trial court is affirmed.