Argued January 3, demurrer overruled; peremptory writ
issued June 14, 1968

SHEPARD, *Plaintiff, v.* BOWE, *Defendant.*

442 P. 2d 238

*Donald F. Myrick,* Grants Pass, argued the cause
for plaintiff. With him on the brief was Donald C. Williams, Grants Pass.

*Michael S. Killoran,* District Attorney, Grants Pass,
argued the cause for defendant. With him on the briefs
was Robert M. Burrows, Deputy District Attorney,
Grants Pass.

Before Perry, Chief Justice, and McAllister,
Sloan, O'Connell, Goodwin, Denecke and Holman,
Justices.

DENECKE, J.

The issue is the extent of the pretrial psychiatric

examination that a trial court can require of a defendant who has pleaded not guilty by reason of insanity. The criminal charge was failing to stop at the scene of an accident resulting in an injury.

The District Attorney moved for an order requiring the defendant to be examined by a psychiatrist selected by the court or the state. The court so ordered. In response to a motion for clarification of the court's order the court further ordered:

> "IT IS THEREFORE ORDERED:
> "1. That Defendant answer questions concerning his accident or conduct at or immediately near the time of the commission of the alleged crime;
> "2. Counsel for the Defendant is ordered not to advise the Defendant to refuse to answer questions concerning his accident or conduct at or immediately near the time of the commission of the alleged crime;
> "3. Counsel is ordered not to interfere by advising Defendant not to answer questions the answer to which might tend to incriminate him; and,
> "* * * * * *"

In response to defendant's petition, this court, exercising original jurisdiction, issued an alternative writ of mandamus, ordering the defendant trial court to show cause why it should not vacate its order. The trial judge demurred and answered, admitting all the facts alleged in the alternative writ.

In *State v. Phillips*, 245 Or 466, 422 P2d 670 (1967), we held that the state has a right to have a mental examination of a defendant who pleads not guilty by reason of insanity. We reasoned that this did not violate the federal and state constitutional prohibition of compulsory self-incrimination because it did not involve testimonial compulsion. In *State v. Phillips,*

supra (245 Or 466), the trial court's order provided that the defendant could not be questioned concerning his acts or conduct at or immediately near the scene of the crime and required that his attorney be permitted to be present. These restrictions were not in issue on the appeal and we did not decide whether they were necessary.

In *State v. Smith*, 248 Or 56, 426 P2d 463 (1967), we expressly did not decide whether *State v. Phillips*, supra (245 Or 466), requires that counsel be present when the psychiatric examination is made.

The issue is now squarely presented to us: Does the court have the authority to require that the defendant, at a pretrial mental examination, answer questions concerning his conduct relating to the offense charged, and can the court order defendant's counsel not to advise his client to refuse to answer questions upon the ground that they might incriminate him?

It is apparent that the defendant's answers to the psychiatrist's questions might be incriminating upon any of the issues in the trial, including the issue whether the defendant committed the act charged.[1]

Other jurisdictions have solved this problem in varying ways.

In *State v. Whitlow*, 45 NJ 3, 210 A2d 763 (1965), the trial court ordered the defendant to answer all questions put to him by the psychiatrist in an examination ordered by the court upon the motion of the state. It further denied defendant's attorney's request to be present at the examination and forbade disclosure of the report of the examination until further order of the court. The Supreme Court of New Jersey af-

---

[1] Danforth, *Death Knell For Pre-trial Mental Examination? Privilege Against Self-incrimination*, 19 Rutgers L Rev 489 (1965).

firmed and stated a detailed procedure to be followed. If the defendant refuses to cooperate in the examination, the court can send him to a state institution for observation without any questioning. If the defendant cooperates with the psychiatrist who examined him on his own behalf, the court will refuse to let such psychiatrist testify to any history or other matter communicated to the psychiatrist by the defendant unless he cooperates to the same extent with the state's psychiatrist; or, such refusal can be conditioned upon the defendant undergoing a cooperative examination at a recess of the trial, i.e., either the defendant submits to a cooperative examination by a psychiatrist engaged on behalf of the state or his expert will be limited in his testimony. The jury will be instructed that any inculpatory statement made by the defendant to the psychiatrist cannot be considered in deciding the issue of guilt, as distinguished from the issue of insanity. The defense attorney may not be present at the examination; however, the defendant's own psychiatrist may be.

Most recently in *State v. Raskin,* 34 Wis2d 607, 150 NW2d 318 (1967), the Wisconsin court offered a bifurcated trial as the solution, with the first trial on the issue of guilt, and if a guilty verdict were returned, a trial by the same jury upon the issue of insanity. No incriminating statements made by the defendant to the psychiatrist could be introduced in the guilt trial. The psychiatrist would be permitted to question the defendant at the examination and defense counsel would be excluded at such examination.

A majority of the courts which have squarely considered the problem, however, have held that the defendant upon a pretrial mental examination cannot be required to answer questions.

The decision in *State v. Whitlow,* supra (45 NJ 3), was criticized in *State v. Olson,* 274 Minn 225, 143 NW2d 69 (1966), particularly that portion providing for an instruction to the jury that they must disregard any inculpatory statement when they are considering the issue of guilt. The court in *State v. Olson,* supra (274 Minn 225), reversed an order for a pretrial mental examination. The court assumed that an examination would necessarily involve questions and answers. The opinion suggests that if the defendant put on expert testimony supporting his defense of insanity, the state would be entitled to some kind of examination during the course of trial.

In *French v. District Court, Division 9,* 153 Colo 10, 384 P2d 268 (1963),[2] the court reversed a lower court ruling striking the defendant's plea of insanity upon the ground that the defendant refused to co-operate in a court-ordered mental examination. The court inferred that if there were two trials, one on the issue of guilt and the other on the issue of insanity, the court could order the defendant to cooperate with the psychiatrist.

In *State v. Hathaway,* 161 Me 255, 211 A2d 558 (1965), a majority of the court held it was reversible error to permit a psychiatrist, who examined defendant on behalf of the state, to testify to damaging admissions on the issue of guilt made by the defendant to him in the course of his mental examination.[3]

In an Illinois proceeding to have defendant declared sexually dangerous, a civil proceeding, the trial court held the defendant in contempt because he refused to answer questions asked by a psychiatrist at

[2] Noted in Wis L Rev 671 (1964).
[3] See Comment on decision in 18 Me L Rev 96 (1966).

a court-ordered mental hearing. His refusal was grounded upon the Fifth Amendment. The Illinois court reversed the contempt conviction, holding that the defendant might in the course of the examination make incriminating statements, that he could not be required to do so, and that the court could not grant judicial immunity for any criminal conduct revealed by such incriminating statements. *People v. English,* 31 Ill2d 301, 201 NE2d 455 (1964).

We conclude that the only way in which the constitutional right of the defendant not to be compelled to testify against himself can be adequately preserved is to hold that the defendant cannot be required to answer the questions which the trial court's order requires him to answer, and the restrictions placed upon defense counsel by the trial court's order must be removed.

We share the view of the court in *State v. Olson,* supra (274 Minn 225), that the right against self-incrimination is not adequately protected by instructing the jury that in determining the issue of guilt they cannot consider any incriminating statements the witness may have made to the psychiatrist.

Even if we prohibited the psychiatrist from testifying to incriminating statements made to him by the defendant in a pretrial mental examination, requiring the defendant to answer could nevertheless jeopardize the privilege against self-incrimination. The statements made by the defendant to the psychiatrist could provide a lead to other evidence which would incriminate the defendant on the issue of guilt. If the trial court ordered that statements made by the defendant to the psychiatrist could not be revealed to the state or to any other person except upon court order, we are of the opinion that under certain circumstances

there is more than a remote chance that such statements would become known to others in addition to the trial court.

We are aware that in holding that the defendant cannot be compelled to answer the psychiatrist's questions we may be lessening the quality of the evidence available to the state. Psychiatrists have expressed the opinion that it is difficult, at least in some cases, to arrive at a competent opinion on the mental state of the defendant if the defendant cannot be questioned about the alleged crime. Krash, *The Durham Rule and Judicial Administration of the Insanity Defense in the District of Columbia,* 70 Yale L J 905, 918 (1961). We are of the opinion that this is a price that must be paid to enforce the constitutional protection.

The defendant's demurrer is overruled and the defendant court is ordered to vacate its orders of March 1, 1967, and March 6, 1967.[4]

PERRY, C. J., concurs in the result.

_____

[4] The March 6 order is a clarification of the March 1 order; however, both orders are included in the alternative writ.