Argued May 5, writ dismissed July 11, 1977

STATE ex rel JOHNSON, *Plaintiff-Relator,*
*v.*
WOODRICH, *Defendant.*
(SC 24825)
566 P2d 859

W. Michael Gillette, Solicitor General, Salem, argued the cause for plaintiff-relator. With him on the brief were James A. Redden, Attorney General, and Catherine Allan, Assistant Attorney General, Salem.

Richard A. Cremer, Assistant Public Defender, Roseburg, argued the cause and filed a brief for defendant.

J. Pat Horton, District Attorney, Darryl Larson, Deputy District Attorney, and David Nissman, Law Clerk, Lane County, filed a brief amicus curiae for plaintiff-relator.

Gary D. Babcock, Public Defender, and Robert C. Cannon, Deputy Public Defender, Salem, filed a brief amicus curiae for defendant.

HOLMAN, J.

Linde, J., specially concurring.

Howell, J., dissenting, with Tongue and Bryson, JJ, joining.

**HOLMAN, J.**

In this mandamus proceeding we are asked to reconsider our decision in *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968). Defendant circuit judge relied on *Shepard* in refusing to allow state psychiatrists to question a criminal defendant concerning acts or conduct at or immediately near the time of the commission of the alleged crimes. The state contends that since the criminal defendant intends to raise the defense of mental disease or defect and to introduce evidence of extreme emotional disturbance, defendant circuit judge has the duty to order a complete psychiatric examination.

Singleton, the criminal defendant, is charged with murder and felony murder. He has given notice of his intent to raise the defense of mental disease or defect and to introduce evidence of extreme emotional disturbance.[1] The state has moved for an order allowing state psychiatrists to examine Singleton and to question him concerning his acts and conduct at or near the time of the commission of the alleged crimes. After hearing testimony from two psychiatrists on the value of unlimited psychiatric examination, defendant circuit judge ordered that state psychiatrists be allowed to examine Singleton, but that, in accordance with our decision in *Shepard,* they not be allowed to question him concerning his acts and conduct at or near the time of the commission of the alleged crimes.

Our decision in *Shepard* was part of a continuing attempt to make good use of psychiatric expertise in criminal trials without compromising the privilege against self-incrimination embodied in the Oregon

---

[1] ORS 161.309, ORS 163.135. A defendant charged with murder is required to give notice of intent to introduce evidence of extreme emotional disturbance only if the evidence will include expert testimony. ORS 163.135. We may therefore assume that Singleton intends to introduce expert testimony on this issue, although that intent does not otherwise appear in the record before us.

and United States Constitutions.[2] Our decision was that, although a criminal defendant raising a psychiatric defense may be required to submit to examination by state psychiatrists, such a defendant may not be required to answer questions concerning his or her conduct relating to the offense charged. Recently, in *State ex rel Johnson v. Richardson,* 276 Or 325, 555 P2d 202 (1976), we indicated that we had some doubt as to whether our decision in *Shepard* represented the best possible accommodation of the use of psychiatric expertise to the constitutional privilege. It is this doubt which we shall now resolve.

The presence of psychiatric issues and psychiatric testimony is not a novelty in the law. English law concerning the insanity defense had its roots in the thirteenth century. Brand, *The Insanity Defense,* 9 Or L Rev 309 (1930). The defense was clearly defined in England in 1843 by *M'Naghten's Case,* 8 Eng Rep 718, and established in Oregon in 1884 by *State of Oregon v. Murray,* 11 Or 413, 5 P 55. Although psychiatry had hardly emerged as a science, one of the questions in *M'Naghten's Case* concerned testimony given by "a medical man conversant with the disease of insanity." In 1910 this court held for the first time that

> "[a] qualified physician may be allowed by a court to assert an opinion from an examination made of a defendant subsequent to the commission of a crime as to whether or not the person accused thereof was sane or insane at the time the offense was perpetrated. * * *."
> *State v. Roselair,* 57 Or 8, 14, 109 P 865.

It was only in 1967 that we held that the state has a right to at least a limited psychiatric examination of a defendant who pleads not guilty by reason of insanity. *State v. Phillips,* 245 Or 466, 422 P2d 670. In 1971 our holding was codified and extended to apply to cases in which a defendant intends to introduce expert testimony on diminished or partial responsibility and/or

---

[2] Oregon Constitution, Art I, § 12. United States Constitution, Amend V, held applicable to the states by *Malloy v. Hogan,* 378 US 1, 84 S Ct 1489, 12 L ed 2d 653 (1964).

extreme emotional disturbance. ORS 161.309, 161.315, 163.135. It was neither our intent nor that of the legislature[3] to attempt to undercut the constitutional privilege against self-incrimination. It was our intent to make the best use of modern psychiatric expertise consistent with the privilege as we understand it.

Recently, in *State ex rel Johnson v. Dale,* 277 Or 359, 560 P2d 650 (1977), we summarized the cases in which we have considered the relationship of the privilege to compulsory psychiatric examination. The state does not contend, and we do not believe, that our basic perception of the self-incrimination problem is incorrect. In our decision in *Shepard* we attempted to solve the problem by limiting the scope of compulsory psychiatric examination. The parties to the present case point out that we could attempt to solve this problem alternatively by imposing limitations on the trier of fact, on the prosecution, or on the state psychiatrists, without limiting the scope of compulsory psychiatric examination. We shall examine each of these alternative solutions.

The first alternative solution is to permit unlimited questioning and unlimited testimony by state psychiatrists but to instruct the trier of fact to consider the testimony only on the issue of mental disease or defect and not otherwise on the issue of guilt. We found this solution inadequate in *Shepard* and we so find it now. We doubt that a judge or juror in this situation could follow such an instruction.

The second alternative solution is to permit unlimited questioning by state psychiatrists but to prohibit

---

[3] Criminal Law Revision Commission, Proposed Oregon Criminal Code, Commentary to Section 43 (ORS 161.315) (1970):

"* * * * *.

"* * * The effect expected is that the decisional law in *Shepard v. Bowe* will continue to extend Fifth Amendment rights to the defendant within the confines of that decision or future decisions as they may develop."

[ 35 ]

the prosecution from using the statements elicited as a basis for testimony which bears upon the elements of the alleged offense. The prosecution would also be prohibited from using the statements as leads to evidence or as aids in otherwise strengthening its case. The state contends that pretrial discovery will permit a criminal defendant to spot and to stop any attempt by the prosecution to make such use of the statements. We are not convinced that this would be so. The temptation on the part of prosecutors to develop their cases would be almost irresistible. It is unrealistic to give a dog a bone and to expect him not to chew on it. We are not inclined to compel criminal defendants to cooperate fully with state psychiatrists in reliance upon the ability of defendants to detect every instance of improper use of the information so gained.

The third alternative solution is to permit unlimited questioning by state psychiatrists for the purpose of forming their opinions but to forbid their disclosing to anyone, either before or during trial, any inculpatory statements which are elicited. We find this solution unsatisfactory. The opinion of an expert witness is of little value to anyone in a court proceeding when it is separated from the facts on which it is based. This solution would therefore do little to advance the good use of psychiatric expertise in criminal trials. In fact, it could actually interfere with the good use of such expertise. One of the psychiatrists who testified in the trial court stated that he would be fearful of unwittingly revealing inculpatory statements in attempting to support or defend his opinion and that the necessity of self-censorship would probably compromise him as an effective witness. We believe, and we think most psychiatrists would agree, that it is undesirable to place on psychiatrists the burden of protecting criminal defendants from substantial risks of self-incrimination.

In addition, we are aware that certain expert witnesses are regularly hired by the state to perform pretrial psychiatric examinations. This procedure

creates relationships which, if the suggested solution was adopted, would make us apprehensive and uneasy. The existence of these relationships led us to make the following statement in *Shepard v. Bowe, supra,* 250 Or at 293-94:

"* * * If the trial court ordered that statements made by the defendant to the psychiatrist could not be revealed to the state or to any other person except upon court order, we are of the opinion that under certain circumstances there is more than a remote chance that such statements would become known to others in addition to the trial court."

The final alternative solution is to bifurcate the trial. The criminal defendant would be tried first on the elements of the alleged offense and subsequently, after psychiatric examination, on the issue of mental disease or defect. We stated in *State ex rel Johnson v. Dale, supra,* that, given our decision in *Shepard,* such bifurcation is not constitutionally required. If we overruled our decision in *Shepard,* we would have to reconsider this question in a proper case. We also stated, however, and still maintain, that bifurcated trials are to be avoided as a matter of efficient judicial administration.

In sum, we find no alternative solution to be as satisfactory as the solution provided by our decision in *Shepard v. Bowe, supra.* That solution is subject to criticism, of course. The two psychiatrists who testified in the trial court stated that the limitation on the scope of compulsory psychiatric examination makes it more difficult (but not impossible) for them to form psychiatric opinions in some cases.[4] We were aware of this difficulty when we reached our decision in *Shepard*; but we recognized the necessity to comply with constitutional principles, and we could not conscientiously say that they would be satisfied by any lesser safeguard than that which was being provided

---

[4] One psychiatrist stated that criminal defendants actually insisted upon the limitation in no more than five percent of the examinations he performed.

in *Shepard.* Of course, it is the nature of the privilege against self-incrimination to increase the burden on the prosecution in a criminal case.[5] We believe that our decision in *Shepard* does not increase the burden any more than that which is necessary to assure full consistency with the constitutional privilege.

Defendant circuit judge correctly relied on our decision in *Shepard v. Bowe, supra,* which decision we choose not to overrule. The writ is dismissed.

**LINDE, J.,** specially concurring.

The court reaffirms that a defendant who offers a defense of mental disease or defect, ORS 161.295-161.305, cannot be compelled in a psychiatric examination under ORS 161.315 to answer questions "concerning his conduct relating to the offense charged." *Shepard v. Bowe,* 250 Or 288, 290, 442 P2d 238 (1968). This ruling is sufficient to dispose of the present case, and I concur. However, this exception from a defendant's obligation to answer questions does not exhaust the defendant's privilege not to be compelled to testify against himself, Or. Const. art. I, § 12.

The quoted exception is designed to prevent that an accused will be compelled in a mental examination to disclose evidence bearing on his commission of acts which he denies. That is a troubling part of the problem. But beyond this, when the state has made a defendant's criminal responsibility hinge on his frame of mind as well as on his acts, his privilege not to testify against himself must extend to the one element of guilt as to the other.[1]

---

[5] *But see Note,* 11 Colum J of Law and Social Problems 403, 424-26 (1975). *See also State v. Smallwood,* 277 Or 503, 561 P2d 600 (1977), and *State v. Phillips,* 245 Or 466, 422 P2d 670 (1967), in which the state prevailed, despite the limitation imposed in *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968).

[1] This is so irrespective of the burden of proof on the issue of mental incapacity. *See Patterson v. New York,* — US ——, 97 S Ct 2319, 53 L Ed 2d

The state has made a person's mental condition a crucial factor in the existence or extent of his culpability. If, as I assume, he could not be compelled to answer questions about his state of mind in court, he equally cannot be compelled to answer them out of court. His statements to the state's examiner about that mental condition may become the basis of testimony against him on that crucial factor in a criminal trial. No one can be compelled to give the prosecution statements that may be used against himself, even if this makes it more difficult for the prosecution to contradict evidence in his favor. The United States Supreme Court has recently reiterated its consistent rejection of arguments that one may be compelled to incriminate oneself when this is required by a governmental need. *See Lefkowitz v. Cunningham,* — US ——, 97 S Ct 2132, 53 L Ed 2d, 1, 8-9 (1977) and cases there cited.

The court has based its prior rulings that a defendant must submit to some form of mental examination on the premise that his privilege against self-incrimination "does not extend to the exclusion of his body or of his mental condition as evidence . . . even when such evidence is obtained by compulsion", *State v. Phillips,* 245 Or 466, 476, 422 P2d 670 (1967), quoting *State v. Grayson,* 239 NC 453, 80 SE2d 387, 390 (1954); "the idea is not that there is no 'compulsion' but that there is no 'testimony' ", *State ex rel Johnson v. Dale,* 277 Or 359, 364, 560 P2d 650 (1977). The theory is that the examining expert elicits defendant's statements only for their bearing on his mental condition, irrespective of any bearing their content, true or false, may have on the events of the alleged

281, 289 (1977). Nor does this case present the question whether some sort of insanity defense is required and cannot constitutionally be conditioned on cooperation in a mental examination, or the implications for the privilege against self-incrimination if the issue of psychic responsibility were removed from the adversary trial of guilt and relegated to a separate dispositional procedure.

crime. Taking stock of defendant's mind, in this view, is like taking his fingerprints, his blood, perhaps an electroencephalogram. Of this theory that the statements of the accused to the psychiatrist are not used in a "testimonial" manner, a leading text on the law of evidence remarks that it "stretches the rationale for the 'testimonial' limitation to its maximum."[2]

It may well be that the state of a man's mind is as much a fact as the state of his digestion,[3] but an accused could not, consistent with the privilege, be made to testify about his digestion. When the issue is what fed a defendant's mind or emotions, perhaps a distinction can be found between generalized psychometric and diagnostic tests that could be considered analogous to physical examinations, to which the accused can be ordered to submit, and more individualized inquiries designed to elicit the accused's own testimony as to thoughts, memories, feelings, or fantasies bearing on that issue, which would be subject to

---

[2]Cleary et al, McCormick on Evidence 287 (2d ed 1972). The authors continue:

> . . . Arguably the statements sought from the accused are not sought for their substantive truth but rather as "verbal acts" permitting a skilled clinician to draw from them inferences regarding the accused's state of mind. This is consistent with the "phenomenological" clinical approach of many psychological examiners in which the subject's perceptions rather than the objective accuracy of those perceptions are the working matter of the inquiry. Yet whether this analysis can pass muster is doubtful. Although this use may be made of the statements, substantive reliance may well also be placed upon the accused's own statements regarding his conscious thoughts at the time of the acts. Moreover, while a sophisticated clinical worker may adopt a phenomenological approach, whether a lay jury, even if carefully instructed, could be relied upon to consider the statements in this manner, is open to serious question.

Against too simple an application of this court's "nontestimonial" premise in *Phillips,* they quote Chief Judge Bazelon's observation in *Thornton v. Corcoran,* 407 F2d 695, 700 (1969):

> "[The argument that no evidence of a testimonal nature is extracted] can hardly do service in the context of a psychiatric examination . . . where the words of the accused are critically important in determining his mental condition."

*Id.,* note 83.

[3]Bowen, L. J., in *Eddington v. Fitzmaurice,* 29 L.R., Ch.Div. 459, 483 (1884).

his privilege not to answer. Perhaps such a distinction would upon scrutiny prove illusory. In any event, a line between "testimonial" and "non-testimonial" mental examination of an accused excludes more than the questions about his conduct relating to the alleged offense that are excluded under *Shepard v. Bowe.* How much more must await a future case.

**HOWELL, J.,** dissenting.

I dissent. I would overrule *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968), because I believe that when the defendant raises an insanity defense the state's psychiatrist must be allowed to conduct an examination of the defendant which is just as complete and thorough as that which defendant's own expert conducts.

In the recent case of *State ex rel Johnson v. Richardson,* 276 Or 325, 327-329, 555 P2d 202 (1976), this court stated that "* * * we now have doubt whether our decision in *Shepard v. Bowe* was correct." This doubt was a recognition of the difficult position in which the state is placed if its psychiatrist cannot inquire into the defendant's conduct and his thoughts and feelings at the time of the commission of the alleged crime. Such a situation seriously impairs the ability of psychiatrists to form a reliable opinion as to whether the defendant was suffering from a mental disease or defect at the time of the conduct in question. Correspondingly, the rule of *Shepard v. Bowe* not only gives the defendant and his experts an unfair advantage, but, by impairing the quality of the evidence presented at trial, it also undermines the reliability of the whole fact-finding process and enhances the possibility of a miscarriage of justice.

In *Shepard v. Bowe, supra,* this court concluded that no better alternative was available if the defendant's privilege against self-incrimination was to receive adequate protection. I believe that this conclusion was wrong, for it seems to me that the defendant's

[ 41 ]

fifth amendment privilege[1] can be adequately protected by preventing the introduction into evidence of any statements made by the defendant to the psychiatrist which may relate to the circumstances or events surrounding the commission of the crime. I believe that the state's psychiatrist, as well as the defendant's, should be allowed to interview the defendant fully and to ask him questions concerning his acts, thoughts, feelings, motivation and general mental condition at the time of the incident in question. If the psychiatrist is not allowed to testify to any statements relating to the issue of guilt—unless, of course, the defendant has already admitted the crime or otherwise introduced substantially the same evidence—the defendant's fifth amendment privilege will not be impaired.

This is the rule which has been adopted by the federal courts and it has been applied in nearly every circuit. *See, e.g., United States v. Baird,* 414 F2d 700 (2d Cir 1969), *cert. denied* 396 US 1005 (1970); *United States v. Albright,* 388 F2d 719 (4th Cir 1968); *United States v. Cohen,* 530 F2d 43 (5th Cir), *cert. denied* 429 US 855, 97 S Ct 149, 50 LEd 2d 130 (1976); *United States v. Bohle,* 445 F2d 54 (7th Cir 1971); *United States v. Reifstek,* 535 F2d 1030 (8th Cir 1976); *United States v. Malcolm,* 475 F2d 420 (9th Cir 1973); *United States v. Julian,* 469 F2d 371 (10th Cir 1972); *Edmonds v. United States,* 260 F2d 474 (DC Cir 1958).[2]

---

[1] *See also* Oregon Const. Art. I, § 12. In the absence of some important policy reason for giving a broader interpretation to an Oregon constitutional provision than that which has been applied to an essentially parallel federal constitutional provision, we are ordinarily not inclined to do so. *See Tupper v. Fairview Hospital,* 276 Or 657, 664 n. 2, 556 P2d 1340 (1976). *See also State ex rel Johnson v. Richardson,* 276 Or 325, 328, 555 P2d 202 (1976); *State v. Florence,* 270 Or 169, 183, 527 P2d 1202 (1974); Note, *The New Federalism: Toward a Principled Interpretation of the State Constitution,* 29 Stan L Rev 297, 316-19 (1977).

[2] Only one jurisdiction, the Third Circuit, has expressed any doubt that the statements elicited in a compelled psychiatric examination could constitutionally be used to establish sanity, *United States v. Alvarez,* 519 F2d 1036 (3d Cir 1975), but that court found it unnecessary to decide that issue in the case then before it. *Id.* at 1042. It should be pointed out, however, that under federal law, unlike Oregon law, sanity is actually an element of the substantive offense which the prosecution is required to prove.

Originally, the rule developed as a matter of common law, but it has recently been codified by statute. *See* Rule 12.2(c) of the Federal Rules of Criminal Procedure:

"(c) **Psychiatric Examination.** In an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. No statement made by the accused in the course of any examination provided for by this rule, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding."

In adopting this position, the federal courts have relied upon the principles of substantial fairness and the maintenance of a proper state/individual balance at trial.[3] *See, e.g., United States v. Albright, supra* at 724. Several of those courts have quoted from the following language in *State v. Whitlow,* 45 NJ 3, 210 A2d 763, 767, 770 (1965):

"* * * To allow the accused to obtain his own expert, and after a private and unlimited conference with him and examination by him, to plead insanity, and then put forward the privilege against self-incrimination to frustrate like activities by the prosecution is to balance the competing interests unfairly and disproportionately against the public. Most states through their legislatures have sought to achieve a proper balance by authorizing or requiring psychiatric examination of persons charged with crime when the appropriate court has learned of their insanity or claim of it. See Annotation, 32 A.L.R.2d 434 (1953); Note, 'Pre-Trial Mental Examination and Commitment; Some Procedural Problems in the District of Columbia,' 51 Geo. L. J. 143 (1962).

"* * * * *.

---

[3] Sometimes this concept is expressed in terms of an estoppel or waiver theory, but such theories must ultimately rely on these same underlying principles. *See, e.g., United States v. Malcolm,* 475 F2d 420, 425 (9th Cir 1973); *United States v. Baird,* 414 F2d 700, 707, 709 (2d Cir 1969); *Pope v. United States,* 372 F2d 710, 721 (8th Cir 1967), *vacated and remanded on other grounds,* 392 US 651 (1968).

"* * * An accused who asserts lack of criminal guilt because of insanity and who fully cooperates with psychiatrists engaged by him for examination purposes, answering all questions put to him including those relating to the crime itself, ought not to be allowed to frustrate a similar comprehensive examination by the State by asserting the bar against self-incrimination. He ought not to be able to advance the claim and then make the rules for determination of the claim. Cf. Comment, 'The Self-Incrimination Privilege: Barrier to Criminal Discovery?,' 51 Cal. L. Rev. 135 (1963)."[4]

The federal courts have found that the need for the maintenance of a fair state/individual balance is not overshadowed by the need to safeguard the defendant's constitutional privilege against self-incrimination. Those courts that have expressly considered the issue have found no inconsistency between the privilege against self-incrimination and the prosecution's right to a psychiatric examination of any defendant who interposes a defense of insanity. No limits similar to those we adopted in *Shepard v. Bowe, supra,* have been imposed by the federal courts and none have proven necessary. Those courts have found that as long as all testimony concerning any statements pertaining to the issue of guilt is excluded there can be no significant danger to any of the policies underlying the privilege against self-incrimination. *See, e.g., United States v. Bohle, supra* at 66-67:

"Such an examination does not violate the Fifth Amendment privilege, because its sole purpose is to enable an expert to form an opinion as to defendant's mental capacity to form a criminal intent. It is not intended to aid in the establishment of facts showing that defendant committed certain acts constituting a crime. It cannot be so used, for it is impermissible to introduce into evidence on the issue of guilt any state-

---

[4] Other federal cases have expressed similar sentiments. *See, e.g., United States v. Reifstek,* 535 F2d 1030 (8th Cir 1976):

"It would violate judicial common sense to permit a defendant to invoke the defense of insanity and foreclose the Government from the benefit of a mental examination to meet this issue." 535 F2d at 1034, *quoting Alexander v. United States,* 380 F2d 33, 39 (8th Cir 1967).

[ 44 ]

ment made by the defendant during the course of such an examination. We note that in the instant case the trial court specifically ruled in granting the examination that 'any testimony predicated upon this evaluation will go solely on the issue of insanity or sanity, and no other issue in this case.' The rights of the defendant are fully protected by this exclusionary rule."

*See also United States v. Albright, supra* at 725:

"* * * [T]he purpose of the examination is not to determine whether a defendant did or did not do the criminal acts charged, but whether he possessed the requisite mental capacity to be criminally responsible therefor, if other proof establishes that he did do them. So limited, we find nothing in the examination, over a defendant's objection, to violate a defendant's privilege against self-incrimination."

An exclusionary rule such as that applied by the federal courts is not a novel concept in our criminal justice system, and its administration should not prove to be unduly burdensome either at the trial level or on appeal. Indeed, the federal cases which have been decided to date indicate that those courts have experienced little difficulty of any kind in applying this rule over the past several decades. *See, e.g., United States v. Bohle, supra* at 67; *United States v. Baird, supra* at 712. Therefore, despite the fears expressed by the majority in rejecting this formula, I see no justification for anticipating any undue difficulty in applying the federal rule in this state.

Significantly, in his amicus brief in this case, the state's public defender has urged this court to adopt a rule similar to that set forth in Rule 12.2(c) of the Federal Rules of Criminal Procedure if we are to make any change in this area. He characterizes this federal rule as "an excellent statute, an excellent model, and it essentially solves the problem [of safeguarding the privilege against self-incrimination]." Basically the same rule is suggested by the attorney general's office. Under these circumstances, there seems little reason for us to reaffirm *Shepard v. Bowe, supra,* and thereby continue to frustrate "the right of the people, as

[ 45 ]

represented by the state, to present competent, persuasive evidence on the defense raised by the defendant." *State ex rel Johnson v. Richardson, supra* at 329.

The difficulties of following the present rule are well documented in the case which is presently before us. Two psychiatrists testified at the hearing on the state's motions for a complete psychiatric examination and both stressed the importance of a complete psychiatric interview. Their conclusion is supported by our previous cases and by other authorities as well. *See State ex rel Johnson v. Dale,* 277 Or 359, 365, 560 P2d 650 (1977); *State ex rel Johnson v. Richardson, supra; Rollerson v. United States,* 343 F2d 269, 274 (DC Cir 1964); Krash, *The Durham Rule and Judicial Administration of the Insanity Defense in the District of Columbia,* 70 Yale L J 905, 918 (1961); Danforth, *Death Knell for Pre-Trial Mental Examination,* 19 Rut L Rev 489 (1965). One of the psychiatrists who testified in this case related the difficulties of reaching a reliable conclusion concerning the defendant's sanity at the time of the incident when he wasn't permitted to question the defendant about that period and then aptly compared that situation to "watching a football game [and] not seeing the last quarter. You don't know really how it came out."

Even more significant, however, in the opinion of both doctors, were the difficulties which arise when the defendant, as in this case, also interposes a defense of extreme emotional disturbance. Such a defense does not presuppose an ongoing mental illness or defect but merely a temporary disturbance in an otherwise normal individual. One doctor noted that extreme emotional disturbance is "very likely to come on within hours or minutes of the incident," and that "if you cannot question them about that particular segment of time, it creates serious drawbacks, serious impairment."

In my view, and in light of these considerations, it simply does not make sense to allow a defendant to

raise the defense of extreme emotional disturbance and then allow him to frustrate any meaningful inquiry into the actual existence of that alleged disturbance during the one period which is most relevant and, indeed, crucial. Moreover, at least under present law, the state's difficulties are further exacerbated because, once the issue is properly raised, the prosecution has the burden of proving the absence of extreme emotional disturbance at the time of the crime. *See State v. Keys,* 25 Or App 15, 548 P2d 205 (1976). If the state is to be required to shoulder that burden of proof, common ordinary fairness requires that it be given access to the only information which will enable it to do so. As the court stated in *United States v. Cohen, supra* at 47-48:

> "Since any statement about the offense itself could be suppressed, a rule forbidding compelled examinations would prevent no threatened evil and the government will seldom have a satisfactory method of meeting defendant's proof on the issue of sanity except by the testimony of a psychiatrist it selects—including, perhaps, the testimony of psychiatric experts offered by him—who has had the opportunity to form a reliable opinion by examining the accused. To hold that compelled psychiatric examinations are forbidden because sanity is an element of the offense and that the privilege against self-incrimination prohibits compulsory elicitation of statements going to an element of the offense would be confining ourselves within an analytical prison. * * *."

In summary, I would overrule *Shepard v. Bowe, supra,* and hold that a defendant who seeks to introduce expert testimony on the issue of his sanity can and should be required to submit to a complete psychiatric examination by a psychiatrist of the state's choosing. No statements made by the accused in the course of this examination which relate to the events and circumstances surrounding the crime could be admitted into evidence unless the defendant has admitted the crime or otherwise introduced similar evidence. Similarly, any other evidence relating to the issue of guilt which is discovered by the prosecution as

[ 47 ]

a result of the examination should be excluded as well.[5] The administration of this kind of rule in the federal courts has demonstrated that such a format serves to protect the legitimate interests of both the defendant and the prosecution and promotes the maintenance of a fair state/individual balance at trial.

Tongue, J., and Bryson, J., join in this dissent.

---

[5] Although no federal court has yet been called upon to address this specific issue, I would hold that the exclusionary rule must apply not only to the use of defendant's own statements but also to any other evidence which the prosecution discovers as a result of its knowledge of the content of such statements. *Cf. Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *Silverthorne Lumber Co. v. United States,* 251 US 385, 40 S Ct 182, 64 L Ed 319 (1920); *Gladden v. Holland,* 366 F2d 580 (9th Cir 1966). However, it is probable that such situations will not occur too frequently, for the defendant who relies upon a defense of insanity will usually admit the commission of the acts constituting the offense and assert his lack of responsibility in a manner similar to a civil confession and avoidance.