Argued and submitted June 2, peremptory writ issued July 8, 1981

**STATE ex rel OTT,**
*Plaintiff,*
*v.*
**CUSHING,**
*Defendant.*

(SC 27785)

630 P2d 861

Donald H. Coulter, of Myrick, Coulter, Seagraves & Myrick, Grants Pass, argued the cause for plaintiff.

William F. Gary, Solicitor General, Department of Justice, Salem, argued the cause for defendant.

PER CURIAM.

Tanzer, J., dissenting opinion.

## PER CURIAM.

Petitioner, charged with murder, gave notice that he intended to invoke the defense of having acted under extreme emotional disturbance and to introduce expert testimony for this defense. ORS 163.115(1)(a), 163.135(1).[1] The prosecution obtained an order from the circuit court which directed the defendant (petitioner here) to submit to an examination by a named psychiatrist on behalf of the state. This order originally included a provision directing the defendant to cooperate in all psychiatric tests and to answer all questions asked by the state's psychiatrist except questions concerning his conduct at or immediately near the time of the commission of the offense. This exception corresponded to the law as set forth in this court's decisions from *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968) to *State ex rel Johnson v. Woodrich,* 279 Or 31, 566 P2d 859 (1977).

Defendant by means of an earlier petition for writ of mandamus in this court challenged certain provisions of the circuit court's order concerning the role of defendant's counsel in the psychiatric examination. We directed the circuit court to modify those provisions of the order. *State ex rel Ott v. Cushing,* 289 Or 705, 617 P2d 610 (1980).

After examining the defendant under the amended order, however, the state's psychiatrist reported to the prosecutor that he could not render an opinion unless the

---

[1] ORS 163.115:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance; . . . "

ORS 163.135:

"(1) The defendant shall not introduce in his case in chief expert testimony regarding extreme mental or emotional disturbance under ORS 163.115 unless he gives notice of his intent to do so."

. . . .

"(4) After the defendant files notice as provided in this section, the state shall have the right to have at least one psychiatrist of its selection examine the defendant in the same manner and subject to the same provisions as provided in ORS 161.315."

defendant answered questions concerning his conduct, intentions, feelings, and thoughts at the time of the alleged offense, the subjects that were excluded by the court's order. The court thereupon further amended its order so as to strike this limitation on the psychiatrist's inquiry. Instead, the order provided:

> "(3) IT IS FURTHER ORDERED that Defendant shall answer all questions put to him by Dr. Thompson including questions concerning Defendant's acts, conduct, feelings, intentions and thoughts at or near the time of the alleged comission of the offense; . . . "

Defendant petitioned for an alternative writ of mandamus, which we allowed, and the state moved to dismiss.

The new paragraph (3) of the circuit court's order concededly was contrary to the law as stated in this court's decisions cited above. The state, on behalf of the circuit judge as defendant in this mandamus proceeding, argues against the law set forth in those decisions. It asks the court to hold that a judicial order obliging a defendant to explain his acts, thoughts, and feelings during the course of events that is charged against him as a crime nevertheless does not compel him to testify against himself, contrary to Oregon Constitution, Art I, § 12, or to be a witness against himself, contrary to the federal fifth amendment. We decline to do so.

The rule of *Shepard v. Bowe, supra,* has not maintained unanimous support in this court. *See State ex rel Johnson v. Richardson,* 276 Or 325, 331, 327-329, 555 P2d 202, 205 (1976) (Howell, J., concurring); *State ex rel Johnson v. Woodrich, supra,* 279 Or at 38, 566 P2d 562 (1977) (Linde, J., specially concurring) and *id.* at 41, 566 P2d 863 (Howell, J., dissenting); *State ex rel Ott v. Cushing, supra,* 289 Or at 715, 617 P2d at 616 (Tanzer, J., concurring). It has, however, survived as the law in this state. Modifications or alternatives that have been suggested in individual opinions have not been pursued by the Legislative Assembly. Even if we were inclined further to elaborate on or change the rule, we would not think it appropriate to do so when in the very case before us, in affirming another part of the circuit court's order, we asserted that the rule of *Shepard v. Bowe* "represented the proper balance between protecting a defendant from self-incrimination and ensuring that the state has sufficient information from which to

properly diagnose defendant's mental condition." 289 Or at 702, 617 P2d at 615. This did not invite the circuit court to contravene that rule.

The state's motion to dismiss the petition for mandamus is denied; peremptory writ to issue.

**TANZER, J.,** dissenting.

I dissent. The test of a rule of law is how it works. If it works well, that is, if it serves the interests of those affected by its operation, we should not try to fix it. If it works badly, it is probably an erroneous rule and we should unhesitatingly reexamine it. The rule we created in *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968), has worked badly since its inception. It serves defendant's interests beyond the needs of the Fifth Amendment and it serves the public's interest not at all. A bare majority of this court nevertheless reaffirmed it in *State ex rel Johnson v. Woodrich,* 279 Or 31, 566 P2d 859 (1977), and we applied it once again in an earlier case of mandamus arising from the same proceeding which underlies this case, *State ex rel Ott v. Cushing,* 289 Or 705, 617 P2d 610 (1980). I concurred, stating:

> "* * * If the order in this case is representative, and I suspect it is, then our case law commencing with *Shepard v. Bowe* is utterly inappropriate. Instead of providing for an objective psychiatric or psychological examination as contemplated by ORS 161.315, we have created a deposition-like adversary proceeding which has very little to do with truth-seeking. It is time, in a proper case, to reexamine this procedure in light of the defendant's rights, the nature of mental defenses, the informational requirements of the examiner and the needs of the adjudicative process, but I concur that this [mandamus proceeding] is not the case in which to do so." 289 Or at 715.

The subsequent proceedings have demonstrated the obvious: our rule in *Shepard v. Bowe* does not function properly. The psychiatrist employed by the state has reported back that it was impossible for him to form a conclusion as to extreme emotional disturbance by a psychiatric interview conducted under the circumstances

dictated by our decision.[1] The psychiatrist's experience demonstrates that this court has gutted ORS 163.135,[2] which requires a defendant to give notice of intent to offer expert evidence of extreme emotional disturbance and, thereupon, to submit to examination by a psychiatrist of the state. It would be better to invalidate the statute than to order compliance in the form of a travesty as we did in the earlier mandamus case.

---

[1] The psychiatrist's letter reported:

"At your request, I have done a psychiatric evaluation of Calvin Ott, and it is enclosed. Mr. Ott is charged with the murder of his wife, Stephanie, on April 8, 1980. The purpose of my examination was to determine if Calvin was suffering from a mental disease or defect at the time of the offense or was under the influence of an extreme emotional disturbance. At the start of the interview, in accordance with a Court Order, I advised the defendant that he need not answer any questions concerning his acts or conduct at or immediately near the time of the commission of the offense. In addition to the defendant, also present during the interview were his defense attorney, Don Myrick, and yourself. The entire proceeding was tape-recorded, and this process resulted in numerous interruptions in the interview."

"Because of the Court Order restricting my questioning, and also because of the presence of the defense attorney, I was prohibited from obtaining sufficient information to arrive at a decision regarding the issue of extreme emotional disturbance. Mr. Ott refused to answer questions regarding his alleged menacing behavior toward his wife which had occurred in the fall of 1979. In addition, of course, he refused to reveal his mental state, his feelings, his intentions, or even discuss his behavior at the actual scene of the crime. However, he apparently was allowed to discuss these issues with Dana Solem, M.D. who examined him on behalf of the defense."

"The Court requested that I render an opinion regarding Calvin Ott's mental state at the time of the homicide. In order for a psychiatrist to do this, it is necessary for him to question the defendant about his thoughts, feelings, and actions during a period of time leading up to this homicide and during the actual homicide itself."

Letter from Jeffrey D. Thompson, M.D., Psychiatric Associates to Clay E. Johnson, Deputy District Attorney, Josephine County (January 28, 1981).

[2] ORS 163.135:

"(1) The defendant shall not introduce in his case in chief expert testimony regarding extreme mental or emotional disturbance under ORS 163.115 unless he gives notice of his intent to do so."

"(2) The notice required shall be in writing and shall be filed at the time the defendant pleads not guilty. The defendant may file such notice at any time after he pleads but before trial when just cause for failure to file the notice at the time of his plea is made to appear to the satisfaction of the court."

"(3) If the defendant fails to file notice he shall not be entitled to introduce evidence for the purpose of proving extreme mental or emotional disturbance under ORS 163.115 unless the court, in its discretion, permits

The illogic of permitting the criminal defendant to present psychiatric evidence of his mental state but not permitting evidence from a similar examination by a psychiatrist for the state is obvious. The policy has been called an "analytical prison," *United States v. Cohen,* 530 F2d 43, 48 (5th Cir), *cert den* 429 US 855 (1976), and a violation of "judicial common sense." *Alexander v. United States,* 380 F2d 33, 39 (8th Cir 1967).[3] It is understandable that the defendant circuit judge, faced with the absurd result produced by obedience to our cases, ruled as he did so that we might reconsider the rule in light of events in the trial court. The majority evades dealing with the substantive problem it has created by wagging its collective finger at the defendant and reiterating the law of the case.

I dissent because the court should exercise its responsibility of fashioning a workable solution which protects a criminal defendant from compulsory self-incrimination and also serves the public interest in fair, accurate adjudication. That is not an easy judicial task, but other courts have fashioned rules which may be sound.

The United States Supreme Court has promulgated FRCrP Rule 12.2 which is similar to ORS 163.135, but expressly goes further. Subsection (c) restricts expert witnesses from testifying as to a defendant's statements regarding guilt or innocence, "whether the examination shall be with or without the consent of the accused." This rule has been applied to require a defendant to submit to psychiatric examination despite Fifth Amendment objection. *See,*

such evidence to be introduced where just cause for failure to file notice is made to appear."

"(4) After the defendant files notice as provided in this section, the state shall have the right to have at least one psychiatrist of its selection examine the defendant in the same manner and subject to the same provisions as provided in ORS 161.315."

[3] It is also discussed in numerous law review articles. *See, e.g.,* Berry, *Self-Incrimination and the Compulsory Mental Examination: A Proposal,* 15 Ariz L Rev 919 (1973); Danforth, *Death Knell for Pre-Trial Mental Examination? Privilege Against Self Incrimination,* 19 Rutgers L Rev 489 (1965); Note, *Requiring A Criminal Defendant to Submit to a Government Psychiatric Examination: An Invasion of the Privilege Against Self-Incrimination,* 83 Harv L Rev 648 (1970); Note *Mental Examinations of Defendants Who Plead Insanity: Problems of Self-Incrimination,* 40 Temp L Q 366 (1967). *See also* LaFave, Criminal Law § 40 304-317 (1972).

*United States v. Leonard,* 609 F2d 1163 (5th Cir 1980); *United States v. Bohle,* 445 F2d 54 (7th Cir 1971); *United States v. Albright,* 388 F2d 719 (4th Cir 1968). *See also State v. Johnson,* 116 Az 561, 570 P2d 503 (1977); *Lee v. County Court of Erie County,* 27 NY2d 432, 318 NYS2d 705, 267 NE2d 452, *cert den* 404 US 823 (1971). Some states have come to the same practice as a matter of common law. *See, e.g., Presnell v. State,* 241 Ga 49, 243 SE2d 496 (1978); *State v. Johnson,* 383 A2d 1012 (RI 1978); *State v. Hathaway,* 161 Me 255, 211 A2d 558 (1965). *But see State v. Olson,* 274 Minn 225, 143 NW2d 69 (1966) (court without authority to order examination absent statute).

Other courts have required defendants to submit to examination upon offering an insanity defense upon varying applications of the concept of waiver. Some have held that submission is the price of offering the defense of insanity. That theory was properly rejected in *State v. Raskin,* 34 Wis2d 607, 150 NW2d 318, 326 (1967), but it may be valid as to a mitigating or exceptional fact such as extreme emotional disturbance, *cf. Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 LEd2d 281 (1977). There is some validity to the notion that because a defendant's offer of psychiatric evidence is based on his statements made during examination, he thereby waives his privilege against self-incrimination at least coextensively with the statements and conclusions therefrom. A similar waiver might arguably occur upon filing of notice of intent to rely upon such testimony. Various waiver analyses have been adopted in *United States v. Malcolm,* 475 F2d 420 (9th Cir 1973); *Pope v. United States,* 372 F2d 710 (8th Cir 1967), *cert den* 401 US 949 (1971); *Lee v. County Court of Erie County, supra; State v. Whitlow,* 45 NJ 3, 210 A2d 763 (1965); *State v. Swinburne,* 324 SW2d 746 (Mo 1959); *State v. Meyers,* 220 SC 309, 67 SE2d 506 (1951). Some courts term the idea an estoppel. *United States v. Baird,* 414 F2d 700 (2nd Cir 1969), *cert den* 396 US 1005 (1970).

The idea that information provided for expert analysis as to state of mind could be regarded as non-testimonial and thus not subject to Fifth Amendment protection, *see, e.g., United States v. Trapnell,* 495 F2d 22 (2nd Cir), *cert den* 419 US 851 (1974); *United States v. Handy,* 454 F2d 885 (9th Cir), *cert den* 409 US 846

(1972); *Battle v. Cameron,* 260 F Supp 804 (DC Cir 1966); *State v. Grayson,* 239 NC 453, 80 SE2d 387 (1954), is questionable since the recent United States Supreme Court decision in *Estelle v. Smith,* 451 US 454, 101 S Ct 1866, 68 LEd2d 359 (1981), in which psychiatric evidence regarding competency was held not admissible as to penalty. Of particular interest in *Estelle,* however, is the pointed manner in which the opinion avoids undermining many cited cases holding that:

"* * * When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, * * * When a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist. [Citations omitted]" 451 US at 465.

Incidentally, I find no support for the statement in *Shepard v. Bowe,* that:

"A majority of the courts which have squarely considered the problem, however, have held that the defendant upon a pretrial mental examination cannot be required to answer questions." 250 Or at 291.

I would conclude to the contrary. *See, e.g., People v. Larsen,* 47 Ill App 3d 9, 361 NE2d 713, 720 (1977).

The purpose of this review is not to embrace any particular theory. Rather, it is to demonstrate that there are more workable ways within the law to serve the rights of the defendant and the interests of the public. Our rule being demonstrably unworkable, we should reconsider it.

Tongue, J., joins in this dissent.