Argued and submitted July 1, peremptory writ to issue directing the trial court
to modify its order consistent with this opinion October 15, 2009

## STATE OF OREGON,
*Plaintiff-Adverse Party,*

*v.*

## STEVEN JAMES PETERSEN,
*Defendant-Relator.*

## (CC CR0801069; SC S057107)

218 P3d 892

Jeremy C. Rice, Assistant Attorney General, Salem, argued the cause for Plaintiff-Adverse Party. With him on the brief were John Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Laura Graser, Portland, argued the cause and filed the brief for Defendant-Relator.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

The issue in this original mandamus proceeding arises out of the state's prosecution of defendant-relator (relator) for murder. In preparation for his upcoming trial, relator has tendered notice of his intent to introduce expert testimony establishing that, at the time of the alleged crime, he suffered from an extreme emotional disturbance, as well as from diminished mental capacity, both of which prevented him from forming the requisite mental state needed to support a charge of murder. The trial court subsequently ordered relator to undergo a mental examination conducted by a state-retained mental health expert. Among other things, the trial court's order required relator, in the course of that examination, to answer "all questions asked of him" concerning his "thoughts at or immediately near the time" of the alleged offense. Relator then brought the present mandamus proceeding, contending that that aspect of the order violates his right against compelled self-incrimination protected under Article I, section 12, of the Oregon Constitution.[1] He seeks a peremptory writ of mandamus requiring the trial court to amend its order to exempt him from any affirmative obligation to answer such questions during the state-conducted mental examination. We agree with relator and therefore issue a peremptory writ.

The facts are undisputed. Relator is accused of murdering his stepson. After his indictment in 2008, relator timely notified the trial court that he intended to present expert testimony to support the affirmative defense of extreme emotional disturbance under ORS 163.115,[2] as well as the defense of diminished capacity or partial responsibility under ORS 161.300.[3] The trial court subsequently ordered

---

[1] The applicable text of Article I, section 12, is set out *post*.

[2] ORS 163.115(1)(a) provides:

"Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder:

"(a) When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

[3] ORS 161.300 provides:

"Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."

relator to undergo a state-conducted mental examination pursuant to ORS 161.315 and ORS 163.135(5).[4] Paragraphs (2), (3), and (4) of the trial court's order provide:

> "(2)   IT IS FURTHER ORDERED that the psychiatrist or licensed psychologist advise the Defendant that he is conducting the examination for and on behalf of the State of Oregon; that he is not examining Defendant for purposes of treatment and that the Defendant need not answer any questions concerning his acts or conduct at or immediately near the time of the commission of the offense. 'At or immediately near the time of the commission of the offense' includes any acts or conduct bearing a proximate connection to the crime charged or of any other crime which acts or conduct could in any way tend to incriminate the Defendant; by incrimination is meant any statement concerning any acts or conduct which involve him in the crime charged or any other crime;
>
> "(3)   IT IS FURTHER ORDERED that the psychiatrist or licensed psychologist is allowed to inquire about the Defendant's thoughts at or immediately near the time of the commission of the offense;
>
> "(4)   IT IS FURTHER ORDERED that the Defendant is to answer all questions asked of him by the psychiatrist or licensed psychologist and/or perform any tests given in the course of the usual examination except as heretofore limited by specification (2)[.]"

The order also provides in the final paragraph (8) that relator's failure to act in accordance with the provisions of the order will—"in addition to any other sanctions" that the trial

---

[4] ORS 161.315 and ORS 163.135 each authorize the state to conduct a mental examination of a criminal defendant after the defendant tenders notice of his or her intent to rely on certain defenses at trial. ORS 161.315 applies to the diminished capacity or partial responsibility defense. That statute provides, in part:

> "Upon filing of notice or the introduction of evidence by the defendant as provided in ORS 161.309(3), the state shall have the right to have at least one psychiatrist or licensed psychologist of its selection examine the defendant."

ORS 163.135(5), in turn, applies to the affirmative defense of extreme emotional disturbance. It provides:

> "After the defendant files notice as provided in this section, the state may have at least one psychiatrist or licensed psychologist of its selection examine the defendant in the same manner and subject to the same provisions as provided in ORS 161.315."

court might wish to impose—preclude relator from introducing expert testimony at trial regarding his mental state.

Relator subsequently moved the trial court to modify its order to prohibit the state's expert from asking questions directed at relator's "thoughts, acts, or conduct" at or near the time of the crime. The trial court denied that motion. As noted, relator then petitioned this court for a writ of mandamus directing the trial court to modify its order in the manner just described. We stayed the state's scheduled mental examination and issued an alternative writ of mandamus commanding the trial court to amend its order as relator had requested or show cause for not doing so. The trial court declined to amend the order and relator now petitions this court for a peremptory writ of mandamus directing the order's modification.

In doing so, relator argues that the relief he seeks is mandated by the rule articulated in a line of cases commencing with *Shepard v. Bowe*, 250 Or 288, 442 P2d 238 (1968), discussed *post*. In response, the state contends that, for purposes of the mental examination that relator faces here, nothing prohibits the state from questioning relator concerning his thoughts at or near the time of the crime because relator has made an affirmative decision to support his proposed defenses through the testimony of his own mental health expert. The state argues that, as a result of that voluntary choice, relator's subsequent participation in any state-conducted mental examination cannot be viewed as "compelled" because relator has, in essence, waived his Article I, section 12, right to remain silent during that examination. To better understand those arguments, we begin by briefly examining the context provided by our past decisions concerning mental examinations like the one at issue here.

In 1910, this court first validated the state's use of expert testimony in response to the claim that a criminal defendant had lacked the capacity to form a culpable mental state at the time of an alleged crime. *See State v. Roselair*, 57 Or 8, 14, 109 P 865 (1910) (holding that a trial court may allow a qualified physician to examine a criminal defendant on behalf of the state and assert an opinion at trial as to whether the defendant was sane or not at the time of the

alleged offense). Nearly 60 years later, in *State v. Phillips*, 245 Or 466, 422 P2d 670 (1967), this court authorized the state to conduct limited pretrial psychiatric examinations of all criminal defendants who pleaded not guilty by reason of insanity to the charges against them.[5] In doing so, the court distinguished between the testimonial and nontestimonial aspects of the evidence that could lawfully be obtained in the course of such examinations:

> " 'The constitutional privilege against self-incrimination in history and principle seems to relate to *protecting the accused from the process of extracting from his own lips against his will an admission of guilt*, and in better reasoned cases it does not extend to the exclusion of his body or of his mental condition as evidence when such evidence is relevant and material, even when such evidence is obtained by compulsion.' "

*Id.* at 475-76 (quoting *State v. Grayson*, 239 NC 453, 80 SE2d 387 (1954)) (emphasis added).

*Shepard v. Bowe* followed in 1968. In that case, the court addressed the questions of whether a trial court has

> "the authority to require that the defendant, at a pretrial mental examination, answer questions concerning his conduct relating to the offense charged, and can the court order defendant's counsel not to advise his client to refuse to answer questions upon the ground that they might incriminate him?"

250 Or at 290. The defendant in *Shepard* had pleaded not guilty by reason of insanity to the criminal charges against him and the state had secured a court order requiring the defendant to undergo a state-conducted pretrial mental examination. Among other things, the examination order: (1) expressly required the defendant to answer any question put to him regarding his conduct at or near the time of the alleged crime; and (2) prohibited the defendant's lawyer from advising his client not to answer questions that might tend to incriminate him. On the defendant's petition for mandamus

---

[5] The holding in *Phillips* was subsequently codified in 1971 and extended to cases involving the defenses of diminished or partial responsibility and extreme emotional distress. *See State ex rel Johnson v. Woodrich*, 279 Or 31, 34-35, 566 P2d 859 (1977) (so stating).

relief that followed, this court first noted that the responses required by the trial court's order "might be incriminating upon any of the issues in the trial, including the issue whether the relator committed the act charged." *Id.* (footnote omitted). After examining how other jurisdictions had dealt with the possibility of compelled self-incrimination in similar situations, the court vacated the examination order, stating:

> "We conclude that the only way in which the constitutional right of the defendant not to be compelled to testify against himself can be adequately preserved is to hold that the defendant cannot be required to answer the questions which the trial court's order requires him to answer, and the restrictions placed upon defense counsel by the trial court's order must be removed.

> "\* \* \* \* \*

> "We are aware that in holding that the defendant cannot be compelled to answer the psychiatrist's questions we may be lessening the quality of the evidence available to the state. Psychiatrists have expressed the opinion that it is difficult, at least in some cases, to arrive at a competent opinion on the mental state of the defendant if the defendant cannot be questioned about the alleged crime. We are of the opinion that this is a price that must be paid to enforce the constitutional protection."

*Id.* at 293-94 (internal citations omitted).

Our discussion in *Shepard* focused narrowly on the conduct-related evidence that the defendant would have been forced to provide as a result of the trial court's order. Consequently, *Shepard*'s primary holding—that the trial court could not force the defendant to discuss his *conduct* at or near the time of the crime—should not be read as the definitive exposition of all the topics that could, if broached in a state-conducted mental examination, potentially violate a defendant's privilege against self-incrimination. Had that been the case, there would have been no need for further holding that, contrary to the trial court's order, the defendant's lawyer could, indeed, advise his client against answering other questions in the course of that examination. Here, however, we are faced with an order that poses a different question: In giving notice of the intent to rely on a mental defense, do

criminal defendants constructively waive their privilege against self-incrimination such that they can be forced—during a pretrial court-ordered mental examination—to discuss the *thoughts* they had at or near the time of an alleged offense? We turn now to that inquiry.

Both the United States and the Oregon constitutions recognize an individual's right against compelled self-incrimination. Here, relator relies on Article I, section 12, of the Oregon Constitution as the source of that right. That constitutional provision states, in part:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

In *State ex rel Johnson v. Woodrich*, 279 Or 31, 566 P2d 859 (1977), this court recognized that pretrial mental examinations must be conducted consistently with the privilege against self-incrimination. In *Woodrich*, the defendant had notified the state of his intent to rely on extreme emotional disturbance and mental disease or defect as defenses in his upcoming murder trial. The state subsequently petitioned this court for a writ of mandamus, calling on the court to reconsider *Shepard* and order an unlimited mental examination of the defendant. In denying the state's request, the court affirmed the primacy of an accused's right to be free from compelled self-incrimination during state conducted mental examinations like the one at issue in *Shepard*. After noting that the statutory authority for such examinations was a codification of this court's holding in *Phillips*, a plurality of the court opined:

"It was neither our intent nor that of the legislature to attempt to undercut the constitutional privilege against self-incrimination. It was our intent to make the best use of modern psychiatric expertise *consistent with the privilege as we understand it.*"

*Id.* at 35 (emphasis added; footnote omitted). In *Woodrich*, however, one member of the court, specially concurring in that decision, observed:

"The state has made a person's mental condition a crucial factor in the existence or extent of his culpability. If, as I assume, he could not be compelled to answer questions

about his state of mind in court, he equally cannot be compelled to answer them out of court. His statements to the state's examiner about that mental condition may become the basis of testimony against him on that crucial factor in a criminal trial. No one can be compelled to give the prosecution statements that may be used against himself, even if this makes it more difficult for the prosecution to contradict evidence in his favor. The United States Supreme Court has recently reiterated its consistent rejection of arguments that one may be compelled to incriminate oneself when this is required by a governmental need. *See Lefkowitz v. Cunningham*, 431 US 801, 808, 97 S Ct 2132, 53 L Ed 2d 1 (1977), and cases there cited.

"* * * * *

"It may well be that the state of a man's mind is as much a fact as the state of his digestion, but an accused could not, consistent with the privilege, be made to testify about his digestion. When the issue is what fed a defendant's mind or emotions, perhaps a distinction can be found between generalized psychometric and diagnostic tests that could be considered analogous to physical examinations, to which the accused can be ordered to submit, and more individualized inquiries designed to elicit the accused's own testimony as to thoughts, memories, feelings, or fantasies bearing on that issue, which would be subject to his privilege not to answer. Perhaps such a distinction would upon scrutiny prove illusory. In any event, a line between 'testimonial' and 'non-testimonial' mental examination of an accused excludes more than the questions about his conduct relating to the alleged offenses that are excluded under *Shepard v. Bowe*. How much more must await a future case."

279 Or at 39-41 (Linde, J., specially concurring) (footnote omitted).

Those observations are instructive today. Here, the trial court's order makes clear that the pretrial examination that relator is scheduled to undergo will be conducted "for and on behalf of the State of Oregon" and not for relator's treatment. The order authorizes the state's mental health expert to question relator concerning his thoughts at or near the time of the alleged crime and requires that relator answer those questions, or face the prospect that he will be

prohibited at trial from introducing expert testimony regarding his mental state at the time of the crime. To reiterate the point made by the special concurrence in *Woodrich*, under those circumstances, relator's ruminations

> "may become the basis of testimony against him on that crucial factor in a criminal trial. No one can be compelled to give the prosecution statements that may be used against himself, even if this makes it more difficult for the prosecution to contradict evidence in his favor."

*Id.* at 39. We agree.

The state, however, cites *State v. Mende*, 304 Or 18, 741 P2d 496 (1987), for the proposition that the principles of waiver upon which that case was decided are also controlling here. In *Mende*, the defendant had moved to dismiss the criminal charges against him, arguing that he had been denied a speedy trial and that his defense had been prejudiced as a result. In support of his motion, the defendant had submitted an affidavit to the trial court asserting a specific allegation of prejudice. However, at the ensuing hearing, the defendant, asserting his constitutional privilege against self-incrimination, refused to be cross-examined by the state on the matters that he had asserted in the affidavit. In response, the trial court struck the allegations of prejudice from the defendant's affidavit. On review, this court upheld the trial court's ruling, concluding that "[b]y submitting the affidavit, [the defendant] waived his privilege not to testify concerning the matters asserted in his affidavit at the hearing on his motion to dismiss." *Id.* at 21.

Drawing on *Mende*, the state now argues:

> "By choosing to invoke statutory defenses related to his mental state, defendant has chosen to place his mental state in issue. By seeking to introduce expert testimony to support his statutory defenses, defendant has voluntarily accepted the conditions that the legislature has placed on the use of such evidence. In that sense, even though required by statute, defendant's answers to the state's questions about his mental state are not 'compelled.' "

Those arguments are problematic for a number of reasons. First, in every trial concerning an allegation of criminal conduct, a defendant's *mens rea* is potentially at issue, whether

the defendant has raised an affirmative defense, or not. In fact, for purposes of the Oregon Criminal Code, conduct and mental state are virtually inseparable:

> "As used in chapter 743, Oregon Laws 1971, and ORS 166.635, unless the context requires otherwise:
>
> "* * * * *
>
> " *'Conduct'* means an act or omission and its accompanying mental state."

ORS 161.085(3) (emphasis added). Here, relator's decision to raise statutory defenses to the charge against him has not altered the state's burden to prove the existence of a culpable mental state beyond a reasonable doubt, nor has it otherwise altered relator's rights under Article I, section 12.

Second, it is not the conditions imposed by the legislature that are problematic in this case. Rather, it is the conditions imposed by the trial court's order. Relator has been ordered to undergo a pretrial mental examination conducted by the state. With the exception of questions concerning his conduct and actions at the time of the crime, the order requires relator to answer all questions asked of him during that examination without regard for how potentially incriminating his answers may be in connection with the murder charge he now faces or, for that matter, any other uncharged crime that he may have committed. Relator's failure to abide by the terms of the order will not only cause relator to forfeit his affirmative defenses, but it will also expressly subject relator to "other sanctions," such as contempt. We have recognized such orders as residing among "obvious examples" of compulsion for purposes of Article I, section 12. *See State v. Fish*, 321 Or 48, 57, 893 P2d 1023 (1995) (so stating).

Third, *Mende* has no practical application at the pretrial stage of a criminal proceeding. *Mende* dealt with the state's right to cross-examine a defendant who, by tendering an affidavit to the court, had effectively offered his direct testimony into evidence at a hearing. The issues here, in contrast, have arisen during the discovery stage of the criminal proceedings against relator; relator has not taken an oath, nor offered his own testimony into evidence, either in person or by affidavit.

That said, there is a final—and ultimately dispositive—reason for rejecting the notion that *Mende*'s principles of waiver should also control here: Notice of relator's intent to present expert testimony relevant to the issue of whether relator suffered from an extreme emotional disturbance and diminished capacity at the time of the alleged crime is not, by itself, a waiver of relator's privilege against self-incrimination. Because of that notice, the state is entitled to have its own expert examine relator. The state's authority to conduct such an examination, however, does not in any manner require relator to answer incriminating questions that may be put to him in the examination process. Relator faces the state's mental examination with his privilege against self-incrimination fully intact. The state's expert is free to examine relator as the expert sees fit, but relator is equally free to not answer questions that he or his lawyer view as incriminating. Thus, the trial court's order in this case is proper insofar as it permits the state's expert to question relator; it is improper, however, insofar as it prospectively requires relator to provide answers that are incriminating on pain of forfeiting his defenses at trial.[6] The only point at which the trial court can order relator to answer questions that elicit incriminating responses is after relator has waived his privilege in that regard. Unless and until relator puts on evidence at trial constituting such a waiver—either through his own testimony[7] or that of his expert—the coercive portion of the trial court's order in this case is premature.

Based on the foregoing analysis, we conclude that the trial court's order must be modified. However, we reject relator's contention that the order must prohibit the state's

---

[6] That part of the order suffers from another problem in that it announces the judge's choice of sanctions before there has been any arguable violation of the order. That choice—assuming it is ever necessary to make—is a discretionary one. The order should not announce, before the fact, how that discretion will be applied.

[7] This court recognized in *State v. Cox*, 337 Or 477, 493, 98 P3d 1103 (2004) that

"when a witness refuses to submit to any cross-examination or to answer cross-examination questions necessary to test the witness's direct testimony, that refusal undermines the trier of fact's ability to rely on the witness's direct testimony. In those circumstances, the courts generally have recognized that a trial court may strike the witness's testimony."

mental health expert from asking questions regarding relator's "thoughts, acts, or conduct at or immediately near the time of the commission of the offense." In our view, the state's mental health expert must be permitted to attempt a full examination. That said, however, the authority to question relator in conjunction with that examination does not necessarily oblige relator to give an answer in every case. Instead, the order must be modified to reflect that relator may invoke, without sanction, his right against self-incrimination as to any question asked of him by the state's expert during the state's pretrial mental examination.

Peremptory writ to issue directing the trial court to modify its order consistent with this opinion.