Argued and submitted August 10, 2016; reversed and remanded as to
petitioner's second through ninth claims for relief, otherwise affirmed
August 16, 2017

## KENT WALTER DOCKEN,
*Petitioner-Appellant,*

*v.*

## John MYRICK,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV130707; A157854

402 P3d 755

Jed Peterson argued the cause for appellant. With him on
the briefs was O'Connor Weber LLP.

Leigh A. Salmon, Assistant Attorney General, argued
the cause for respondent. With her on the brief were Ellen F.
Rosenblum, Attorney General, and Paul L. Smith, Deputy
Solicitor General.

Before DeHoog, Presiding Judge, and Shorr, Judge, and Sercombe, Senior Judge.*

---

* Shorr, J., *vice* Flynn, J. pro tempore.

**SHORR, J.**

Petitioner appeals a judgment denying his petition for post-conviction relief. In that petition, petitioner alleges that his trial counsel was inadequate when he made a number of errors during the investigation leading up to the criminal trial underlying this case. On appeal, petitioner asserts eight assignments of error; however, we write only to address petitioner's first two assignments, the resolution of which makes consideration of his remaining six assignments unnecessary.

In petitioner's first assignment of error, he argues that the post-conviction court wrongly overruled his hearsay objection to certain statements presented in an affidavit from the prosecutor in his underlying criminal case. Defendant John Myrick, superintendent of the Two Rivers Correctional Institution (the state), concedes that the post-conviction court erred. For the reasons stated below, we accept the state's concession and reverse and remand the post-conviction court's denial of all of petitioner's claims that relate to his trial counsel's failure to (1) adequately investigate petitioner's voluntary intoxication defense and (2) present sufficient evidence in support of that defense (petitioner's second, third, fourth, fifth, sixth, seventh, and ninth claims for relief).

In petitioner's second assignment of error, he contends that the post-conviction court erred in denying his eighth claim for relief—that his trial counsel provided inadequate assistance when he failed to attend a pretrial mental health evaluation ordered by the state. Specifically, petitioner argues that the post-conviction court erroneously applied the wrong standard of prejudice when evaluating that claim. In response, the state cross-assigns error, claiming that the post-conviction court erroneously concluded that petitioner's trial counsel's failure to attend the mental health evaluation reflected a lack of reasonable professional skill and judgment, and, in the alternative, argues that petitioner's argument that the post-conviction court applied the wrong standard of prejudice is unpreserved. As we discuss below, we conclude that the post-conviction court correctly determined that trial counsel's failure to attend

the mental health evaluation reflected a lack of reasonable professional skill and judgment. Further, we do not accept the state's argument that petitioner's argument is unpreserved. Rather, we agree with petitioner and conclude that the post-conviction court applied the wrong standard of prejudice when determining whether petitioner's right to adequate counsel under Article I, section 11, of the Oregon Constitution was violated. Accordingly, we also reverse and remand the post-conviction court's denial of petitioner's eighth claim of inadequate assistance of counsel related to his trial counsel's failure to attend the state mental health evaluation so that the court can apply the correct standard of prejudice on remand.[1]

We now turn to the relevant facts. "A post-conviction court's findings of historical fact are binding * * * if there is evidence in the record to support them." *Montez v. Czerniak*, 355 Or 1, 8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistent with the post-conviction court's conclusions of law." *Id.* We state the following facts, which are not disputed on appeal, in accordance with that standard.

Petitioner was convicted by a jury of assault in the first degree, ORS 163.185, and attempted assault in the fourth degree, ORS 163.160; ORS 161.405. Both charges stemmed from an incident where petitioner stabbed two victims while riding with them in a cab. At no point at or prior to the trial did anyone dispute that petitioner committed those assaults or that they were unprovoked. The only issue was whether petitioner was so drunk at the time of the assaults that he could not form the requisite intent to commit them—*i.e.*, voluntary intoxication.

---

[1] Under petitioner's second assignment of error, petitioner also argues that his trial counsel's failure to attend the mental health examination was a violation of petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution. We reverse and remand this case to the trial court under our state constitutional analysis and do not reach petitioner's federal constitutional arguments. *See Greist v. Phillips*, 322 Or 281, 290, 906 P2d 789 (1995) (noting that we "consider[] state constitutional claims before considering federal constitutional claims").

In preparation for the voluntary intoxication defense, petitioner's initial trial attorney filed a notice under ORS 161.309(3) of intent to rely on a defense of guilty except for insanity due to mental disease or defect. Petitioner's first attorney also arranged for petitioner to be examined by Dr. Swiercinsky, a neuropsychologist. Swiercinsky reported that, in his opinion, petitioner may have suffered an alcohol-induced blackout at the time of the assaults—a condition which he may have been especially susceptible to because of potential brain damage caused by petitioner's chronic alcohol abuse, exposure to toxic fumes, and head injuries. Swiercinsky also suggested that petitioner have an MRI done to prove the existence of structural brain damage.

After Swiercinsky examined petitioner, petitioner's first criminal defense attorney withdrew from representation and a second attorney was appointed. Petitioner's second attorney filed a new ORS 161.309(3) notice. Petitioner's second attorney then had Dr. Julien, an anesthesiologist who has extensively researched psychopharmacology and the effects of chemically induced amnesia, examine petitioner. Like Swiercinsky, Julien concluded that petitioner had likely suffered an alcohol-induced blackout at the time of the assaults and, therefore, that petitioner could not have formed the intent necessary to commit those assaults.

In order to negate petitioner's voluntary intoxication defense, the state exercised its right under ORS 161.315 to have petitioner be evaluated by its own psychologist, Dr. Cochran. Although petitioner's trial counsel met with petitioner prior to that evaluation, petitioner's counsel was not present for Cochran's interview because he was given short notice that it was occurring and had a scheduling conflict. Before the state's evaluation, petitioner's counsel informed petitioner that Cochran was hired by the prosecutor and that, because of that fact, he should not allow Cochran to suggest answers or put words in petitioner's mouth.

The case proceeded to trial where Cochran was called by the state and Julien was called by petitioner. At trial, Julien testified consistently with his above stated opinion. Cochran, on the other hand, testified that petitioner

relayed the events before the assaults to him in a way that was drastically inconsistent with petitioner's previous renditions of those events and petitioner's testimony at trial.

As noted, after the trial, a jury convicted petitioner of assault in the first degree and attempted assault in the fourth degree. Petitioner initially appealed, but then voluntarily dismissed that appeal and filed the petition for post-conviction relief that is currently on appeal before us. In his petition, petitioner asserted 13 claims for relief. Those claims were that petitioner was denied adequate and effective assistance of trial counsel as guaranteed by Article I, section 11, as well as the Sixth and Fourteenth Amendments when

"(a) Counsel unnecessarily disclosed investigative reports during the plea-bargaining process.

"(b) Counsel withdrew an ORS 161.309 notice without following through on the recommendations of the neuro-psychologist Dr. Swiercinsky, who had examined Petitioner.

"(c) Counsel failed to consult fully with Dr. Swiercinsky about his findings and recommendations for follow-up.

"(d) Counsel failed to present testimony by Dr. Swiercinsky or any other neuropsychologist.

"(e) Counsel failed to present testimony by any psychologist.

"(f) Counsel failed to present evidence explaining the potential relationship between Petitioner's consumption of alcohol and Petitioner's medical history in light of the findings by Dr. Swiercinsky and the follow-up that he had recommended.

"(g) Counsel failed to fully prepare anesthesiologist/ pharmacologist Dr. Julien for testimony in light of Petitioner's medical history, Dr. Swiercinsky's evaluation and the follow-up that Dr. Swiercinsky had recommended.

"(h) Counsel failed to accompany Petitioner during his examination by Dr. Cochran, the psychologist retained by the prosecution.

"(i) Counsel failed to properly cross-examine Dr. Cochran in light of Petitioner's medical history, Dr. Swiercinsky's

evaluation and the follow-up that Dr. Swiercinsky had recommended.

"(j) Counsel failed to investigate Dr. Cochran's professional history to determine whether that history was relevant to his qualifications to testify as an expert witness and/or whether that history was relevant to his credibility.

"(k) Counsel failed to cross-examine Dr. Cochran regarding his professional history as it related to his credibility.

"(l) Counsel failed to object to testimony by Dr. Cochran indicating his opinion regarding Petitioner's truthfulness.

"(m) Counsel failed to conduct a thorough investigation to corroborate Petitioner's contentions negating the prosecution's theory about his purported motive to assault the alleged victim in Count 1."

A post-conviction trial was held to determine if petitioner was entitled to relief. A majority of the evidence and testimony was submitted in writing. The state presented, among other testimony, an affidavit from the prosecutor in petitioner's criminal trial. In that affidavit, the prosecutor discussed a post-trial conversation he had had in a grocery store with a juror from the criminal trial. Describing that conversation, the prosecutor stated:

"That juror said that the black-out defense and competing expert testimony was immediately disregarded, and the jury spent the rest of the deliberations on [petitioner's] intent regarding the secondary victim, the cabbie. From what that juror told me, the jury had no sympathy for voluntary intoxication excuses and brushed that aside. * * * Jurors I have spoken with have been dismissive of voluntary intoxication and related lack of intent defenses. The description of the juror from [petitioner's] case is consistent with information I have received from jurors in other cases."

Petitioner objected to the admission of that portion of the affidavit as being based on inadmissible hearsay. The post-conviction court overruled that objection.

After the post-conviction trial, the post-conviction court issued a written judgment with attached findings of fact and conclusions of law. In that judgment, the post-conviction

court denied all of petitioner's claims for relief. Regarding petitioner's claims relating to trial counsel's failure to call additional experts regarding petitioner's voluntary intoxication defense—in order to follow-up on Swiercinsky's recommendation that petitioner receive a brain scan, and to fully prepare Julien for his testimony—the post-conviction court stated:

> "It is this court's 42 years of criminal trial experience as a deputy district attorney, defense attorney and trial court judge that jurors are almost never swayed by an involuntary intoxication defense. It is a defense of last resort, when nothing else is possible. The court accepts as credible the testimony of William Porter, the prosecuting attorney. He testified that he spoke to a trial juror who approached him after the case and said that the jurors immediately rejected the voluntary intoxication defense. There is not credible evidence here that additional witnesses, MRIs, or other brain scans would have been sufficiently persuasive."

Regarding petitioner's claim that his trial counsel erroneously failed to attend Cochran's evaluation, the post-conviction court stated:

> "There is no proof whatever that Dr. Cochran misstated the words of Petitioner. The witness was sworn to tell the truth and no proof of bias has been presented. In fact, it is essentially ridiculous to claim that a mental health professional would risk not only his livelihood but even his freedom to lie under oath about a person he had not previously met and would have no contact with after trial. While it might be error that trial counsel was not present for the interview, Petitioner has not proven that this error had a significant effect on the outcome of the trial."

Petitioner then filed this appeal. As discussed, petitioner advances eight assignments of error. Because our disposition on petitioner's first assignment of error makes resolution of petitioner's third through eighth assignments of error unnecessary, we only address petitioner's first assignment, that the post-conviction court erred in overruling petitioner's objection to hearsay evidence presented by the state in the prosecutor's affidavit, and his second assignment, that the post-conviction court erred in denying petitioner relief on his claim that his trial counsel was ineffective and

inadequate when he failed to attend Cochran's evaluation of petitioner.

As discussed below, we agree with petitioner—and accept the state's concession—that the post-conviction court erred in overruling petitioner's hearsay objection and, accordingly, we reverse and remand the denials of all claims that were affected by that error (petitioner's second, third, fourth, fifth, sixth, seventh, and ninth claims for relief). Further, we also agree with petitioner that the post-conviction court erred when it denied post-conviction relief on petitioner's eighth claim that his trial counsel was ineffective when he failed to attend Cochran's evaluation of petitioner and, accordingly, also reverse and remand the post-conviction court's denial of relief on that claim.[2]

On appeal, we examine a court's denial of post-conviction relief for errors of law appearing on the record. ORS 138.220; *Montez*, 355 Or at 8. With that standard of review and the undisputed facts in mind, we turn to petitioner's first assignment of error.

In petitioner's first assignment of error, he asserts that the post-conviction court erroneously overruled petitioner's hearsay objection to the statements made in the affidavit of the prosecutor of his case regarding a juror's post-trial statements. As we have previously noted, the state concedes that the post-conviction court erred in relying on those hearsay statements. We agree.

"We will * * * affirm a judgment despite evidentiary error if there is little likelihood that the particular error affected the verdict." *State v. Dunning*, 245 Or App 582, 591, 263 P3d 372 (2011) (internal quotation marks omitted). Here, we cannot conclude that there is "little likelihood" that the erroneous admission of the juror's statements affected the post-conviction court's verdict as to petitioner's claims that related to trial counsel's failure to (1) present "additional witnesses" related to his voluntary intoxication defense, (2) have petitioner undertake an "MRI[]" as recommended

---

[2] On appeal, petitioner does not contest the post-conviction court's denials of his first, eleventh, twelfth, and thirteenth claims for relief; therefore, we do not address them.

by Swiercinsky, and (3) provide an MRI or another brain scan to Julien prior to his testimony.[3] In its written findings and conclusions, the post-conviction court explicitly noted that its denial of those claims was substantially based on that hearsay evidence, stating:

> "The court accepts as credible the testimony of * * * the prosecuting attorney. He testified that he spoke to a trial juror who approached him after the case and said that the jurors immediately rejected the voluntary intoxication defense. There is not credible evidence that additional witnesses, MRIs, or other brain scans would have been sufficiently persuasive."

In contrast, the post-conviction court's denial of petitioner's eighth claim for relief—that his trial counsel was inadequate for failing to attend Cochran's evaluation—was predicated on different reasoning, unrelated to the hearsay. That reason was namely that, because "[t]here [was] no proof whatever that Dr. Cochran misstated the words of Petitioner" and there were numerous reasons to believe that Cochran was not lying, "Petitioner ha[d] not proven that [trial counsel's] error had a significant effect on the outcome of the trial." Thus, because petitioner's eighth claim was denied based on entirely different reasoning, we conclude that the post-conviction court's error in considering the prosecutor's hearsay statement was harmless as to that claim. Consequently, because we cannot conclude that there was "little likelihood" that the hearsay evidence affected the post-conviction court's decisions related to them, we reverse and remand the post-conviction court's rulings on petitioner's second, third, fourth, fifth, sixth, seventh, and ninth claims for relief.

We turn next to the post-conviction court's denial of petitioner's eighth claim for relief. The post-conviction court's decision to deny that claim is at issue in both petitioner's second assignment of error and the state's cross-assignment of error. Both assignments relate to petitioner's counsel's failure to attend the state's pretrial mental health evaluation.

---

[3] These are petitioner's second, third, fourth, fifth, sixth, seventh, and ninth claims for relief.

Under Article I, section 11, and the Sixth Amendment, defendants have the right to the assistance of counsel.[4] However, "[t]he mere act of appointment of counsel to represent an indigent accused is * * * not sufficient to provide the protection afforded by [those] constitutional provisions." *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981). Instead, both the Oregon and United States constitutions require "adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf." *Id.*; *see also Montez*, 355 Or at 6-7 (noting that, although Article I, section 11, has been interpreted "independently of the United States Supreme Court's interpretation of the Sixth Amendment," "the standards for determining the adequacy of legal counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution").

In determining whether a lawyer has provided inadequate assistance under the Oregon Constitution, the petitioner must prove two elements:

> "First, we must determine whether petitioner demonstrated by a preponderance of the evidence that his lawyer failed to exercise reasonable professional skill and judgment. Second, if we conclude that petitioner met that burden, we further must determine whether he proved that counsel's failure had a tendency to affect the result of his trial."

*Montez*, 355 Or at 7 (internal quotation marks and brackets omitted). Similarly, when determining whether a lawyer has provided ineffective assistance of counsel under the Sixth Amendment, a petitioner must first show that his or her trial counsel's performance "fell below an objective standard of reasonableness," and then that that deficient performance was "prejudicial to the defense." *Strickland v. Washington*, 466 US 668, 688, 692, 104 S Ct 2052, 80 L Ed 2d 647 (1984).

---

[4] Article I, section 11, provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel." Similarly, the Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

In this case, the post-conviction court concluded that, as to petitioner's eighth claim for relief, "[w]hile it might be error that trial counsel was not present for [Cochran's] interview, Petitioner ha[d] not proven that this error had a significant effect on the outcome of the trial." We read that conclusion to mean that the post-conviction court determined that petitioner had proven that his trial counsel's failure to attend Cochran's evaluation was a failure to exercise "reasonable professional skill and judgment," but that petitioner had nonetheless failed to demonstrate that that failure "had a tendency to affect the result of his trial." *Montez*, 355 Or at 7. The state cross-assigns error to the first portion of the post-conviction court's conclusion. In contrast, petitioner assigns error to the second portion of that conclusion. Adhering to the analytical framework outlined in *Montez*, we begin by addressing the state's argument on cross-assignment.

The post-conviction court did not err insofar as it concluded that petitioner had demonstrated that, by failing to attend petitioner's state-ordered, pretrial mental health evaluation, his trial counsel had "failed to exercise reasonable professional skill and judgment." *Id.* "The reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances[.]" *Hayward v. Belleque*, 248 Or App 141, 148, 273 P3d 926 (2012), *rev den*, 353 Or 208, *cert den sub nom Hayward v. Premo*, ___ US ___, 134 S Ct 101 (2013). Further, the post-conviction court's standard of review is highly deferential. *Id.* A post-conviction court, when reviewing a claim of ineffective assistance of counsel, will not second guess a trial counsel's tactical decisions unless those decisions "reflect an absence or suspension of professional skill and judgment." *Id.* "A 'tactical decision' in the course of an investigation is a conscious choice by a lawyer either to take or to omit some action on the basis of an evaluation of the nature and complexity of the case, the likely costs and potential benefits of the contemplated action, and other factors." *Stevens v. State of Oregon*, 322 Or 101, 109, 902 P2d 1137 (1995). A "tactical decision" may reflect an absence of professional skill and judgment where that decision resulted in a lawyer's failure to "do those things reasonably necessary

to diligently and conscientiously advance the defense." *Id.* at 108 (internal quotation marks omitted).

As we discussed above, at trial, it was undisputed that petitioner had committed the assaults for which he was convicted and that those assaults were unprovoked. Consequently, petitioner's only defense at trial was voluntary intoxication. Trial counsel's decision to rely upon that defense as petitioner's sole defense was a reasonable tactical choice; however, because of that decision, petitioner's trial counsel was obligated to "do those things reasonably necessary to diligently and conscientiously advance th[at] defense." *Id.* (internal quotation marks omitted). That included undertaking an "investigation that [wa]s legally and factually appropriate to the nature and complexity of the case so that [he] [wa]s equipped to advise and represent the client in an informed manner." *Id.* Petitioner's trial counsel did not do that when he failed to attend Cochran's critical examination of petitioner.

Trial counsel knew or should have known that a key part of the state's case was going to hinge on the evaluation and testimony of Cochran. Further, trial counsel knew or should have known that a majority of Cochran's opinion was going to depend upon the observations that Cochran made during petitioner's pretrial mental health evaluation. Finally, trial counsel knew or should have known that, at Cochran's evaluation, there was a risk that petitioner would provide the state with potentially incriminating statements absent counsel's presence at that interview. *See State v. Petersen*, 347 Or 199, 210-11, 218 P3d 892 (2009) (noting that, although a state mental health expert may ask questions about a defendant's "thoughts, acts, or conduct at or immediately near the time of the commission of the offense," a defendant "may invoke, without sanction, his right against self-incrimination as to any question asked of him by the state's expert during the state's pretrial mental examination" (internal quotation marks omitted)). Consequently, given Cochran's evaluation's importance to both petitioner's and the state's case, we conclude that any "investigation that [was] legally and factually appropriate to the nature and complexity of the case" would necessarily include trial

counsel's attendance at that evaluation. As a result, we conclude that trial counsel failed to do those things reasonably necessary to diligently and conscientiously advance the defense of involuntary intoxication and, accordingly, failed to exercise reasonable professional skill and judgment.

On cross-assignment of error, the state argues that trial counsel's failure to attend Cochran's evaluation did not exhibit a failure of reasonable professional skill and judgment because, given the remarkable consistency with which petitioner had relayed his story to trial counsel and others prior to the evaluation, trial counsel reasonably could conclude that merely advising petitioner of the dangers of the interview and his rights prior to the evaluation was sufficient to adequately protect petitioner. We disagree.

We recognize that the Supreme Court has stated, in *dicta*, that there may be situations, including in the context of a psychological interview conducted for a presentencing report, where merely advising a defendant prior to a mental health evaluation constitutes adequate assistance. *See State ex rel Russell v. Jones*, 293 Or 312, 314, 647 P2d 904 (1982) (stating that, although "Article I, section 11, and the Sixth Amendment require that counsel may not be barred from attendance at a presentence interview," "the presence of counsel is [not] required at every presentence interview," including psychological interviews, and "that [counsel's] absence [from such an interview] would [not] constitute ineffective assistance of counsel").[5] However, we also recognize that in many pretrial mental health evaluations— including the mental health evaluation in this case—trial counsel's presence is essential for the defendants to adequately navigate those evaluations, exercise their constitutional rights, and decide whether pursuing a mental health defense through trial is in their best interest.

---

[5] In *Russell*, the Supreme Court was analyzing very different circumstances than the facts present in this case. For instance, the issue in *Russell* was not whether the defendant's counsel provided inadequate assistance of counsel by not attending a *pretrial* mental health evaluation. Instead, *Russell* was a mandamus proceeding where the Supreme Court considered whether the trial court could completely bar a defendant's counsel from attending a *presentence* mental health evaluation. *See* 293 Or at 314. Thus, although the above quoted excerpt from *Russell* has persuasive value as we undertake our analysis, it does not bind our decision.

As noted above, in a pretrial mental health evaluation, the state's mental health expert may ask questions regarding a defendant's "thoughts, acts, or conduct at or immediately near the time of the commission of [an] offense." *Petersen*, 347 Or at 210-11 (internal quotation marks omitted). However, even though the state's expert may ask those questions, the defendant "may invoke, without sanction, his right against self-incrimination as to any question asked of him by the state's expert during [that] pretrial mental examination." *Id.* at 211. Unsurprisingly, to help defendants decide when it is appropriate to exercise their right, defendants have the right to have an attorney present during their pretrial mental health evaluations. *Shepard v. Bowe*, 250 Or 288, 293, 442 P2d 238 (1968). The right to have counsel present to advise a defendant is especially important in cases—like this one—where the defendant's proffered mental health defense is intrinsically tied to the defendant's "thoughts, acts, or conduct at or immediately near the time of the commission of the offense." *Petersen*, 347 Or at 210-11 (internal quotation marks omitted).

Further, allowing trial counsel to be present at those evaluations gives trial counsel the opportunity to listen to the questions asked by the state's mental health expert, preview petitioner's responses, and help petitioner decide whether continuing to pursue a mental health defense is appropriate. Although defendants may not need to answer any questions that are potentially incriminating at a pretrial mental health evaluation, once that defendant "puts on evidence at trial" of his mental health defense, "either through his own testimony or that of his expert," that defendant has waived his or her right against self-incrimination, and that defendant will have to answer questions from the state at trial that may result in defendant revealing incriminating information. *Id.* at 210 (footnote omitted). Thus, by attending the state's mental health evaluation, defense counsel is presented with an important opportunity to help a defendant determine, given the state's expert's questions and the defendant's potential answers, whether the benefit of pursuing a mental health defense is outweighed by the potentially incriminating information that would come out at trial if the defendant continued to pursue that defense.

Finally, trial counsel's attendance at many pretrial mental health evaluations is important because it also better prepares trial counsel to cross-examine the state's mental health expert. As we have previously stated, in many cases where a defendant is relying on a mental health defense—including this one—the state's expert testimony is going to be essential to proving the state's case. Being present at that expert's evaluation is one of the only ways to ensure that trial counsel has the ability to thoroughly and effectively cross-examine that expert.

With the above information in mind, we conclude that, here, trial counsel should have known—and apparently did know—that petitioner was at a high risk of incriminating himself during his pretrial mental health evaluation. We also note that trial counsel should have known that the only way to effectively inoculate petitioner from that risk was trial counsel's presence at that evaluation. We further recognize that trial counsel should have known that attending the mental health examination was the only way to help petitioner make a fully informed decision of whether to continue to pursue a voluntary intoxication defense at trial. Finally, we conclude that, given the importance of Cochran's testimony to the state's case, trial counsel should have known that his attendance at Cochran's evaluation was going to be essential to an effective cross-examination. Thus, given trial counsel's failure to act upon the above stated information by attending petitioner's pretrial mental health evaluation, we agree with the post-conviction court's conclusion that petitioner's trial counsel failed to exercise reasonable professional skill or judgment when he failed to attend Cochran's evaluation.

Having determined that the post-conviction court correctly concluded that trial counsel "failed to exercise reasonable professional skill and judgment," we must next determine whether the trial court also properly concluded that petitioner failed to prove that his trial counsel's failure "had a tendency to affect the result of his trial." *Montez*, 355 Or at 7. On appeal, petitioner argues that the post-conviction court erred by applying the wrong standard of prejudice when concluding that his trial counsel's failure

did not prejudice him. In response, the state contends that we should not reach petitioner's argument because it was either unpreserved or petitioner invited any error by the post-conviction court. We disagree with the state, reach petitioner's argument, and agree with petitioner that the post-conviction court applied an incorrect test for prejudice. Accordingly, we reverse and remand the post-conviction court's denial of petitioner's eighth claim for relief for the court to determine whether petitioner can demonstrate prejudice under the correct standard.

We begin by rejecting the state's preservation argument. As we have previously noted, "for preservation purposes, a party ordinarily need not reiterate orally the arguments that it has made in writing, and also need not renew those arguments after the court has made its ruling." *Maxfield v. Nooth*, 278 Or App 684, 687, 377 P3d 650 (2016). Instead, we must determine "whether a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error." *Id.* (internal quotation marks omitted). Here, we are persuaded that petitioner did so when he cited "the state and federal case law establishing the legal standard for prejudice on a claim of inadequate or ineffective assistance of counsel" to the post-conviction court in his trial memorandum. *Id.*

We similarly reject the state's argument that petitioner invited the post-conviction court's error. "Under the invited error doctrine, a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Brown*, 272 Or App 321, 324, 355 P3d 129 (2015) (internal quotation marks omitted). For example, a party who affirmatively misstates the law cannot appeal the decision of a court that relies on that misstatement. *Id.*

Here, the state contends that petitioner invited the post-conviction court's error when, at the post-conviction trial, his counsel "characterized the standard for assessing prejudice as whether the inadequacies * * * would have 'undercut a major part of the State's case' or 'undercut' petitioner's 'alleged motive completely.'" In the alternative, the state contends that petitioner also affirmatively misstated

the prejudice standard at that trial when it referred to an affidavit by Julien, without quoting it, in which Julien stated that "counsel's omission was fundamentally material and adversely affected petitioner's case." (Internal quotation marks and brackets omitted.)

After reviewing the record, the state's argument that petitioner invited error in those instances is unconvincing. Petitioner did not affirmatively misstate the *standard* for prejudice in either instance cited by the state. Instead, in both instances, petitioner was indicating *how* trial counsel's alleged errors met and exceeded the legal standard. Consequently, because there is no evidence that petitioner affirmatively misstated the law to the post-conviction court, we conclude that petitioner did not invite the post-conviction court's alleged error.

We next consider whether the post-conviction court applied the correct standard of prejudice when denying petitioner's eighth claim for post-conviction relief. "[T]o prove prejudice, petitioner had to show that his trial counsel's deficient exercise of skill and judgment had a tendency to affect the result of the prosecution." *Green v. Franke*, 357 Or 301, 321, 350 P3d 188 (2015) (internal quotation marks omitted). "[W]here the effect of inadequate assistance of counsel on the outcome of a jury trial is at issue," whether trial counsel's error had a "tendency to affect the outcome" of that trial demands a finding of "more than mere possibility, but less than probability" of prejudice. *Id.* at 322. This means, "the issue is whether trial counsel's acts or omissions *'could have tended to affect'* the outcome of the case." *Id.* at 323 (quoting *Lichau v. Baldwin*, 333 Or 350, 365, 39 P3d 851 (2002) (emphasis in *Green*)).

Here, when denying petitioner's claim that his trial counsel was inadequate in failing to attend Cochran's evaluation, the post-conviction court applied the wrong standard of prejudice. Instead of requiring that petitioner prove that his trial counsel's error *could* have tended to affect the outcome the case, the court required that petitioner prove that trial counsel's error *"had a significant effect on the outcome of the trial."* (Emphasis added.) That standard is erroneous. Accordingly, because the post-conviction court applied the

wrong standard of prejudice in this case, we reverse and remand the post-conviction court's denial of petitioner's eighth claim for relief—*i.e.*, that he was denied adequate assistance of counsel when his trial counsel failed to attend Cochran's mental health evaluation—so that the post-conviction court can evaluate prejudice under the correct legal standard. *Green*, 357 Or at 323.

In conclusion, because the trial court erroneously overruled petitioner's objection to inadmissible hearsay, and then relied on that hearsay in denying petitioner's second, third, fourth, fifth, sixth, seventh, and ninth claims for relief, we reverse and remand the post-conviction court's denial of those claims. Further, because the trial court applied an erroneous standard of prejudice when denying petitioner's eighth claim for relief, we reverse and remand the post-conviction court's denial of that claim.

Reversed and remanded as to petitioner's second through ninth claims for relief; otherwise affirmed.